**David DOWNS and Lynette Downs; Christopher Downs, a Minor, by Lynette Downs, His Mother and Next Friend; Jessica Downs, a Minor, by Lynette Downs, Her Mother and Next Friend; and Raquel Downs, a Minor, by Lynette Downs, Her Mother and Next Friend, Appellants,**

v.

**A & H CONSTRUCTION, LTD., Appellee,**

**and**

**Robert B. Crase d/b/a Crase Construction and Dennis Crase, Defendants.**

No. 90–1365.

Supreme Court of Iowa.

Feb. 19, 1992.

Michael M. Sellers and Steven C. Kaiser of Dreher, Wilson, Simpson, Jensen, Sellers, Butters, Adams & Kaiser, P.C., Des Moines, for appellants.

Diane M. Stahle and Gene R. LaSuer of Davis, Hockenberg, Wine, Brown, Koehn & Shors, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, LAVORATO and ANDREASEN, JJ.

ANDREASEN, Justice.

A construction worker was seriously injured when he shot himself in the head with a nailgun. At the time of his injuries

the worker was employed by a subcontractor who was hired to frame a house. The worker brought suit against the general contractor to recover damages for his injuries. The district court granted summary judgment to the general contractor. The court found the general contractor did not owe any duty to the construction worker. We agree and therefore affirm the summary judgment.

## I. *Scope of Review.*

It is a well-settled rule that, when reviewing the propriety of a motion for summary judgment, we, like the district court, review the record in a light most favorable to the party opposing summary judgment. *Hike v. Hall,* 427 N.W.2d 158, 159 (Iowa 1988). Summary judgment is proper only when the entire record before the court shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.;* Iowa R.Civ.P. 237. "While we agree that negligence actions are seldom capable of summary judgment adjudication, *see* Iowa R.App.P. 14(f)(10), the threshold question is whether the defendant owed the plaintiff a duty of care. Whether such a duty exists is a question of law." *Sankey v. Richenberger,* 456 N.W.2d 206, 207 (Iowa 1990).

## II. *Background and Procedural History.*

David Downs was an hourly construction worker employed by Robert B. Crase d/b/a Crase Construction (Crase). Crase was in the subcontracting business, performing specific work for general contractors. Crase did not carry workers' compensation insurance.

Crase entered into an oral contract with A & H Construction (A & H) to frame a residential structure in Urbandale, Iowa. Under the contract, Crase was to do the framing, roofing, and cornice work. Crase was paid on a square foot basis, plus an hourly rate for any necessary changes. The property upon which the house was being built was owned by A & H; it was to be a show house.

A & H is a general contractor in the business of constructing residential homes. It is essentially a two-person operation run by William Anderson and Ben Harrington. Harrington was the field manager for A & H and arranged for specific work to be performed by subcontractors. Part of Harrington's duties included inspecting the progress of subcontractors' work, receiving reports, and making suggestions or recommendations. Harrington apparently also had the power to direct that work be stopped or resumed or that alterations or deviations be made. In conjunction with these duties, Harrington usually was present at the construction site one or more times per day. Anderson usually appeared at the construction site two or three times per week.

In the late afternoon of April 1, 1987, Downs and another Crase worker erected scaffolding to be used for the next day's work. At the end of the day, Downs apparently voiced some concerns regarding the positioning of the scaffolding; he thought it was too close to the structure to permit a safe working condition.

Although Crase owned the pump jacks used in the scaffolding, the scaffolding poles and boards were purchased by A & H. Apparently, it was common practice for the poles and boards to be used in construction of the structure after their use in the scaffolding.

On April 2, 1987, Downs was working on the scaffolding, nailing lookouts for soffit backing with a power nailgun. In order to nail some of the lookouts, Downs was required to lean out away from the structure and the scaffolding while holding on to one of the scaffolding poles. This was an awkward position. Downs was attempting to nail a lookout in this position when he suffered serious injury.

Downs was looking away from the nailgun and the area to be nailed, presumably to protect his face from any debris caused by the force of the shooting nail. The nailgun discharged, and Downs realized he had somehow shot himself; although he did not initially know where. Downs jumped into the structure through a window frame

and called for help. At this point, Downs found out he had shot himself in the head behind the left ear. One of Downs' co-workers soon arrived and pulled the nail out. Downs was taken to the hospital where he had a seizure.

On March 8, 1988, Downs filed a lawsuit against A & H, Robert B. Crase d/b/a Crase Construction and Dennis Crase.[1] Downs' suit alleged that the sole proximate cause of his injury was the failure of A & H to "properly provide a safe and adequate environment in which to work, and to maintain the premises in a safe condition." A & H answered and affirmatively alleged that it owed no duty to Downs.

During the summer and fall of 1988 and the spring of 1989, the parties entered into extensive discovery. On June 27, 1989, A & H filed a motion for summary judgment supported by an affidavit, a statement of undisputed facts, and a memorandum. *See* Iowa R.Civ.P. 237(h). A & H claimed that there was no material issue of disputed facts and that as a matter of law it owed no duty or obligation to Downs. Downs filed a resistance, statement of disputed facts, and memorandum in opposition to the motion for summary judgment.

Downs then sought to amend his petition by adding an additional count, alleging that A & H was negligent in failing to provide safe scaffolding in accordance with the regulations of the Occupational Safety and Health Administration (OSHA) and in failing to keep the premises safe in accordance with the City of Urbandale Housing Code. Downs later sought to amend his petition a second time by adding a count alleging that A & H negligently deprived Downs of his right to receive workers' compensation benefits by hiring a subcontractor who did not have workers' compensation coverage. A third amendment was sought, adding yet another count, alleging that A & H was negligent in erecting or maintaining, or inspecting the scaffolding.

Arguments were held on the motion for summary judgment and the motions to amend. Relying upon section 409 of the Restatement (Second) of Torts, the court granted A & H's motion for summary judgment. Implicit in the district court's summary judgment ruling was the granting of Downs' third amendment.

Downs then requested reconsideration of the summary judgment pursuant to Iowa Rule of Civil Procedure 179(b). The court denied this request and at the same time disallowed the negligent deprivation of workers' compensation amendment, an issue the court had not addressed in the initial ruling. The court concluded that the claim did not state a cause of action.

Downs timely appealed, and we transferred the case to the court of appeals. The court of appeals, in a three-three split, affirmed the summary judgment by operation of law. *See* Iowa Code § 602.5106(1) (1989). We granted further review and now affirm the grant of summary judgment.

We think the issues can best be categorized under the following separate headings: Control; peculiar risk-inherent danger; and negligent deprivation of workers' compensation.

### III. *Control.*

Three issues raised by Downs are resolved by our determination of one question: Did A & H retain sufficient control over the building project such that it owed a duty to Downs?

As to the issues predicated on the Restatement (§§ 328E–343 & 414) we have, in the past, allowed these two different theories of liability to be applied to similar factual patterns. *Compare Konicek v. Loomis Bros., Inc.*, 457 N.W.2d 614 (Iowa 1990); *Lunde v. Winnebago Indus., Inc.*, 299 N.W.2d 473 (Iowa 1980); *Greenwell v. Meredith Corp.*, 189 N.W.2d 901 (Iowa 1971) (§§ 328E & 343) *with Giarratano v. Weitz Co.*, 259 Iowa 1292, 147 N.W.2d 824 (1967); *Farris v. General Growth Dev. Corp.*, 354 N.W.2d 251 (Iowa App.1984) (§ 414).

From these cases, "[t]he general rule is that an employer of an independent

---

**1.** Crase Construction and Crase were later dismissed out of the case without prejudice.

contractor is not vicariously liable for injuries arising out of the contractor's negligence.... The commonly-accepted reasoning [for this proposition] is the lack of control by the employer over the details of the contractor's work." *Lunde,* 299 N.W.2d at 475 (citations omitted). *See also* Restatement § 409 and associated comments. The general rule and its exceptions apply equally to owners of property and the contractors they hire, *see Lunde,* 299 N.W.2d at 475, as well as to general contractors and the subcontractors they hire. *Konicek,* 457 N.W.2d at 618. We, thus, move on to discuss the two theories posed by Downs, which are two of the recognized exceptions to the general rule of section 409.

A. Restatement Sections 328E and 343 provide:

§ 328E. Possessor of Land Defined.

A possessor of land is

(a) a person who is in occupation of the land with intent to *control* it or

(b) a person who has been in occupation of the land with intent to *control* it, if no other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

§ 343. Dangerous Conditions Known or Discoverable by Possessor.

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

(Emphasis added.)

In determining whether a duty is owed under section 343, a breach of which may result in the imposition of liability, we first address the general proposition that "a *possessor* of land is subject to liability for physical harm caused to his *invitees.*" Restatement § 343 (emphasis added). Because we have consistently held that an employee of a subcontractor is a business invitee, *see Konicek,* 457 N.W.2d at 618, we must next determine whether the party being sued was a "possessor of land"; for if it was not there can be no liability imposed under section 343. *See, e.g., Lunde,* 299 N.W.2d at 479.

Who is a possessor of land under section 328E depends primarily upon the amount of control that a particular person exercises over the property. In *Lunde,* we equated the control necessary to be a possessor of land under section 328E to the retained possession requirement of section 422 and an associated comment. *Id.* Using this test, we stated that in order for an entity to be considered a possessor of land the "involvement in overseeing the construction must be substantial in order to impose liability under a safe premises theory." *Id.* Based on this analysis, we specifically held that the employer of the independent contractor was not a possessor of the land because any control the employer retained fell short of that required to impose liability; and furthermore, the employer had relinquished occupation and control of the land during the construction period. *Id.* at 479–80.

We find from our limited scope of review of the pleadings, depositions, answers to interrogatories, and affidavits that the control retained by A & H was not substantial enough to render it a possessor of land under section 328E. Because A & H was not a possessor of land, it necessarily owed no duty to Downs under section 343. Accordingly, the district court was correct in granting A & H's motion for summary judgment on this ground.

B. Restatement section 414 provides:

§ 414. Negligence in Exercising *Control* Retained by Employer.

One who entrusts work to an independent contractor, but who retains the *control* of any part of the work, is subject to

liability for physical harm to others for whose safety the owner owes a duty to exercise reasonable care, which is caused by his failure to exercise his *control* with reasonable care.

(Emphasis added.)

■ Section 414 provides another exception to the general rule of section 409. However, in order for a duty to arise under section 414, control must be retained. In *Giarratano* and *Farris* cited above, we held that there was retained control and thus a duty owed by a developer to an employee of a general contractor and a duty owed by a general contractor to an employee of an independent contractor, respectively. This case is significantly different from *Giarratano* and *Farris* where the control retained was substantially greater.

On our limited review, the record clearly places this case squarely in line with comment c to section 414, which provides:

c. In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. *It is not enough* that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his method of work, or as to the operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work his own way.

(Emphasis added.)

Because we believe this case to be controlled by the foregoing comment, any control retained by A & H was insufficient to raise it to the level necessary under section 414. Therefore, as a matter of law, A & H owed no duty to Downs.

■ C. Downs alleges A & H was negligent because it owned part of the scaffolding and allowed the scaffolding to be erected where it knew or should have known

that it would be unsafe. This issue is governed by the preceding reasoning that requires a certain amount of control to be exercised on behalf of the general contractor before it can become liable for injury to an employee of a subcontractor.

Here, A & H had no control over the construction of the scaffolding nor did it know or have reason to know that the scaffolding was unsafe. Crase and its employees constructed and had control over the scaffolding. Although Downs apparently had concerns over the location of the scaffolding, he only related them to his fellow Crase employees.

The allegation that A & H owned part of the scaffolding is not of importance. If there was any problem with the scaffolding, it was due to its proximate location to the frame structure, not because of the materials provided by A & H. A & H did not owe a duty to Downs because it did not have control over the erection of the scaffolding.

IV. *Peculiar Risk and Inherent Danger.*

Restatement sections 413 and 427 provide:

§ 413. Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor.

One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar risk of physical harm to others unless special precautions are taken, is subject for physical harm caused to them by the absence of such precautions if the employer:

(a) fails to provide in the contract that the contractor shall take such precautions, or

(b) fails to exercise reasonable care to provide some other manner for the taking of such precautions.

§ 427. Negligence as to Danger Inherent in the Work.

One who employs an independent contractor to do work involving a special danger to others which the employer

knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

These sections state exceptions to the general rule of section 409. We have held the duties outlined in these sections are owed by a principal contractor to workmen of an independent contractor on the job. *Giarratano*, 147 N.W.2d at 834.

In *Giarratano*, we stated that "sections 413 and 416 should be construed together though the risks described in these two sections are worded differently. ('A peculiar unreasonable risk of physical harm to others' as opposed to 'peculiar risk of physical harm to others.')" *Id.*

Furthermore, according to the Restatement, there is a close relation between section 416 and 427.

The two rules represent different forms of statements of the same general rule, that the employer remains liable for injuries resulting from dangers which he should contemplate at the time he enters into the contract, and cannot shift to the contractor the responsibility for such dangers, or for taking precautions against them.

Restatement § 416, comment *a.* Thus, sections 413, 416 and 427 are to be read in similar fashion. This leads us to the question of whether the use of the scaffolding in the construction of a single family residential structure was a peculiar risk or an inherently dangerous activity.

We think this case is governed by the reasoning used in *Lunde.* 299 N.W.2d at 475–79. We started with the general premise that "[o]rdinary building operations or activities, including … construction, are generally not considered work of an inherently or intrinsically dangerous character rendering the employer-owner liable for injuries resulting from the negligence of an independent contractor in doing the work." *Id.* at 477 (citation omitted). We then stated that, under section 416, an exception to

the general rule, there are two ways to look at danger:

In the one case the doing of the work creates danger and requires active care to counteract the danger. In the other there is no danger unless created by negligence. The one starts with danger and requires preventive care to make safety, while the other starts with safety and requires negligence to make danger.

*Id.* at 476–77 (citation omitted).

▪▪▪ The question to us became "whether the risks incurred inhered in the nature of the work itself, or from collateral acts of negligence." We are presented with the same question here.

We are not prepared to say that work on scaffolding at a residential building site is peculiar under section 413 or 416, nor are we prepared to say that it is an inherently dangerous activity under section 427. *See, e.g., Fettig v. Whitman*, 285 N.W.2d 517, 521–23 (N.D.1979) ("Construction of a building (house) is not, in the usual instance, considered work of an inherently or intrinsically dangerous character as to bring into operation the exception defined in § 427. [citing cases, Am.Jur. and C.J.S.] … The negligence … was not a danger which arises from the very performance of constructing a house but was from the manner in which the construction was done and thus not within the exception of § 416. …").

Downs produced affidavits in which the affiants stated that working on scaffolding to install siding on new construction is an inherently dangerous activity. We recognize that work on the scaffolding involves some degree of risk. "But was such a risk inherent in the construction of the building because the project was 'conspicuously, exceptionally, unusually dangerous … [with] the mention or sight of such work immediately caus[ing] the reaction 'DANGER!'. … '" *Lunde*, at 478 (citation omitted). We hold as a matter of law that work on a scaffold at a residential structure is not the type of work that would immediately cause the reaction DANGER. We conclude that the trial court correctly ruled that A & H was not liable under the ratio-

nale of the peculiar risk or inherent danger doctrines.

### V. *Negligent Deprivation of Worker's Compensation.*

Contrary to A & H's claim, we find that the issue of negligent deprivation of workers' compensation has been preserved. In the amendment to his pleadings, Downs alleged that A & H knew that Crase did not have workers' compensation insurance. Downs further alleged that A & H required Crase and its employees to perform work on the house knowing that Crase did not have insurance. He urges the combination of the knowledge and actions of A & H constituted a negligent deprivation of workers' compensation benefits. He asks damages in an amount equivalent to the workers' compensation he would have received for his injuries if Crase had carried proper insurance.

■ In this state, the right to workers' compensation is purely statutory. *Caylor v. Employers Mut. Casualty Co.*, 337 N.W.2d 890, 893 (Iowa App.1983). Although the workers' compensation statute is to be liberally construed in favor of the worker, the statute is not to be expanded by reading something into it that is not there. *Cedar Rapids Community School Dist. v. Cady*, 278 N.W.2d 298 (Iowa 1979). What is not there, which Downs wants us to read into the statute, is what is present in many other states' workers' compensation schemes: the imposition of workers' compensation liability upon general contractors to employees of uninsured subcontractors. *See, e.g.,* 1C A. Larson, *Workmen's Compensation Insurance* §§ 49.10–49.15 (1990); 81 Am.Jur.2d *Workmen's Compensation* § 171 (1976); 99 C.J.S. *Workmen's Compensation* § 107 (1958).

■ Because we are bound by the statute, we are precluded from recognizing a cause of action allowing an employee of an uninsured subcontractor to recover workers' compensation benefits from the general contractor, who is not the employer. The decision to recognize or create such a cause of action belongs to the legislature, and it is theirs alone.

Downs further argues that A & H tortiously interfered with his right to receive workers' compensation benefits. In support of this contention, Downs cited *Clark v. Figge*, 181 N.W.2d 211 (Iowa 1970) (tortious interference with a business relationship); *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558 (Iowa 1988) (tortious interference with contract of employment), and other cases following the reasoning set forth in *Springer*. *See Springer v. Weeks & Leo Co.*, 475 N.W.2d 630, 632 (Iowa 1991) (appeal after remand; listing cases).

The district court was correct in stating that, "[w]hile *Springer* and *Niblo* [*v. Parr Manufacturing, Inc.*, 445 N.W.2d 351 (1989)] deal with Workers' Compensation law and the rights of an employee thereunder, they are not, as plaintiff contends, authority for the imposition of a duty upon a general contractor to insure that a subcontractor possesses Workers' Compensation insurance coverage."

Under the current statutory scheme, Downs had a right to bring an action at law against Crase to recover damages. *See* Iowa Code § 87.21. A & H has in no way interfered with that right. The court's granting of the amendment and then deciding the issue on summary judgment was proper.

### VI. *Alleged Violations of Statutory Duty.*

Finally, we note that Downs also raises on appeal an issue of liability based on A & H's alleged violations of regulations of the Occupational Safety and Health Administration and the Urbandale housing ordinance. We summarily dispose of this issue, as it was not preserved for our review. The issue was not addressed in the district court's ruling on summary judgment, in the motion or brief in support of reconsideration, or in the ruling on the motion for reconsideration. *State v. Higginbotham*, 351 N.W.2d 513, 516 (Iowa 1984). *See also* Iowa R.App.P. 14(a)(5).

### VII. *Conclusion.*

Under the standards of Iowa Rule of Civil Procedure 237 and our limited scope

of review thereof, there is no genuine issue as to any material fact; A & H did not owe any duty to Downs. Thus, A & H is entitled to a judgment as a matter of law. Costs are assessed to Downs.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.