Dana Annette **HOFFNAGLE**, Appellant,

v.

**McDONALD'S CORPORATION**, Appellee.

No. 93–1009.

Supreme Court of Iowa.

Oct. 19, 1994.

Mark J. Seidl and Mark E. Liabo, Tom Riley Law Firm, P.C., Cedar Rapids, for appellant.

James M. Powers and Mark H. Rettig, Hines, Pence, Day & Powers, P.C., Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, ANDREASEN, and TERNUS, JJ.

McGIVERIN, Chief Justice.

The question here is whether a franchisor may be held liable for injuries suffered by its

franchisee's employee as a result of an assault by third parties. The district court granted summary judgment for the defendant franchisor, McDonald's Corporation, concluding as a matter of law that defendant owed no duty of security to the franchisee's employee, plaintiff Dana Annette Hoffnagle. We agree with the district court that the defendant franchisor did not retain sufficient control of the business operation so as to give rise to a duty in this case. Accordingly, we affirm the district court's grant of summary judgment in favor of defendant.

I. *Background facts and proceedings.* On January 21, 1990, plaintiff Dana Annette Hoffnagle was working at a McDonald's restaurant located at 1530 First Avenue N.E. in Cedar Rapids. Hoffnagle was employed by Rapid–Mac, Inc., a corporation owned by Gerald L. Mrozinski and Judith C. Mrozinski, who are the franchisees, licensees, and lessees of the restaurant by virtue of several agreements with defendant McDonald's Corporation (McDonald's), the franchisor, licensor, and lessor.

At approximately 10:00 p.m., two men entered the restaurant, were served, and sat down in the dining area to eat their food. Since these two men were the only customers in the restaurant at that time, Hoffnagle was performing clean-up duties and went to the entryway of the restaurant to sweep the floor. After the two men placed another order at the counter, they went to the entryway, grabbed Hoffnagle, and took her outside the restaurant to the parking lot where they attempted to force Hoffnagle inside their car. No security guards were on duty at the restaurant that evening.

As Hoffnagle was resisting the two men's attempted abduction, Tammy Geiger, a managerial employee of the restaurant, came to her assistance. With Geiger's help, Hoffnagle escaped from the assailants and returned to the restaurant. Once inside, Hoffnagle sat down to compose herself, and Geiger went to take the order of a drive-thru customer. Geiger noticed that the assailants remained outside driving their car from one side of the parking lot to the other, but she did not lock the doors or telephone the police at that time.

Some time later, at least one of the men went back inside the restaurant and again attempted to take Hoffnagle outside. Geiger intervened again, causing the assailants to leave the restaurant's premises. Geiger then telephoned the police department, and Hoffnagle later made an official complaint against the assailants. The police department investigation and report that followed revealed the identity of the two men who were responsible for the attacks on Hoffnagle.

Hoffnagle filed a claim for workers' compensation benefits with her employer, Rapid–Mac, Inc., and was compensated under the workers' compensation statutes. *See* Iowa Code ch. 85 (1989).

Subsequently, Hoffnagle filed a suit against McDonald's, the owner of the real property where the restaurant is located. As previously mentioned, McDonald's is a party to a franchise agreement, license agreement, and operator's lease with the Mrozinskis, all dated May 20, 1987. McDonald's was not Hoffnagle's employer on the date the two men attacked her.

The essence of the license agreement between McDonald's and the Mrozinskis "is the adherence by licensee to standards and policies of license policies of McDonald's for providing for the uniform operation of all McDonald's restaurants within the McDonald's system including, but not limited to, serving only designated food and beverage products, the use of only prescribed equipment and building layout and designs, strict adherence to designated food and beverage specifications and to licensor's prescribed standards of quality, service and cleanliness in licensee's restaurant operation."

Among other provisions, the licensing agreement provides that the licensee will adopt and use business manuals prepared by McDonald's, and that McDonald's will make training available at a training center, currently Hamburger University, which the licensee and the licensee's managerial employees are to attend. The agreement also gives McDonald's the right to inspect the restaurant at all reasonable times to ensure that the licensee is operating the restaurant in compliance with the standards and policies of

the McDonald's system. When the licensee fails to comply with the standards and policies of the McDonald's system or when other specified events occur, the licensing agreement gives McDonald's the right to terminate the agreement.

On the basis of these agreements, plaintiff claims that McDonald's owned and controlled, or had the right to control, the restaurant and property where plaintiff was assaulted, and that McDonald's is liable for plaintiff's damages proximately caused by McDonald's alleged negligence in the exercise of such control, including failing to provide adequate security or to direct the providing of adequate security at the restaurant.

Following discovery, McDonald's filed a motion for summary judgment, see Iowa R.Civ.P. 237(b), asserting that no genuine issue of material fact exists and that as a matter of law McDonald's has no duty to provide Hoffnagle a safe place to work or to provide security for her, as those duties are the responsibility of Hoffnagle's employer.

Plaintiff resisted, contending that the issue of defendant's control of the restaurant's operation and leased property is a material, factual issue within the province of the jury.

The district court sustained defendant's motion for summary judgment, concluding as a matter of law that defendant has no duty which could render it liable to the plaintiff for her injuries caused by third persons.

Plaintiff appealed.

The record consists of the pleadings, motion for summary judgment and resistance, depositions, affidavits, exhibits, and answers to written interrogatories. *See* Iowa R.Civ.P. 237(c).

II. *Scope of review.* We will uphold a grant of summary judgment when no material fact is at issue and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c). When we review the propriety of a grant of summary judgment, the moving party is required to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.

*Shaw v. Soo Line R.R. Co.*, 463 N.W.2d 51, 53 (Iowa 1990). In determining whether the movant has met this burden, we review the record in the light most favorable to the party opposing summary judgment. *Downs v. A & H Constr., Ltd.*, 481 N.W.2d 520, 522 (Iowa 1992).

"While we agree that negligence actions are seldom capable of summary adjudication, *see* Iowa R.App.P. 14(f)(10), the threshold question in any tort case is whether the defendant owed the plaintiff a duty of care." *Sankey v. Richenberger*, 456 N.W.2d 206, 207 (Iowa 1990). Whether such a duty arises out of the parties' relationship is always a matter of law for the court. *Downs*, 481 N.W.2d at 522; *Shaw*, 463 N.W.2d at 53.

III. *Restatement (Second) of Torts Sections 344 and 414 as sources of a duty of security.* Plaintiff and the district court both focus on the Restatement (Second) of Torts (1965) as the point of analysis for the determination of whether defendant franchisor owes a duty of security towards the injured franchisee's employee. However, plaintiff bases her arguments on Restatement section 344 while the district court grounded its decision on Restatement section 414.

A. Plaintiff asserts that the source of defendant's duty of security is Restatement (Second) of Torts Section 344:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Based on this section of the Restatement, plaintiff derives two theories of the duty of security McDonald's allegedly owes her.[1]

---

1. Defendant does not debate whether the franchisee's employee meets Restatement section 344's

"members of the public while they are upon the land for such a purpose" requirement. Accord-

First, Hoffnagle argues that McDonald's is a possessor of land and as such owes her a duty to discover and protect against harm from criminal acts occurring at the restaurant. Hoffnagle contends that the restaurant has had a history of criminal violence and McDonald's has failed to provide for adequate security to ensure her safety.

Second, plaintiff argues that McDonald's, again as an alleged possessor of land, has a duty to protect her against harm from McDonald's franchisee's negligence occurring at the restaurant. Plaintiff finds the basis for this second theory in comment c of section 344, which states in pertinent part that:

> c. *Independent contractors and concessionaires.* The rule stated [in section 344] applies to the acts of independent contractors and concessionaires who are employed or permitted to carry on activities upon the land. The *possessor* is required to exercise reasonable care, for the protection of the public who enter, to supervise the activities of the contractor or concessionaire.

(Emphasis added.) Restatement (Second) of Torts § 344 cmt. c.

Among other allegations of negligence, plaintiff asserts that the franchisee's managerial employee, Geiger, was not appropriately trained because Geiger failed to lock the doors or telephone the police after the initial attack on Hoffnagle. Plaintiff insists that McDonald's had a duty to discover the franchisee's provisions for security and to protect its franchisee's employee, through security training or otherwise, from harm resulting from the franchisee's allegedly negligent provision for security at the restaurant.

B. Although the district court also relied on the Restatement (Second) of Torts to determine whether McDonald's owed a duty of security to Hoffnagle, the district court did not base its analysis on section 344. Rather, the district court relied on section 414:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Restatement (Second) of Torts § 414.

In selecting this section of the Restatement as its guide for determination of a franchisor's duty of security to its franchisee's employee, the trial court stated:

> It has been noted that the liability of a franchisor for injuries suffered by employees of a franchisee is a developing area of law. Analogies have been made between the franchisor and franchisee employee relationship to areas of law such as landlord-tenant, parent-subsidiary, employer-independent contractor, lessor-lessee, and principal-agent relationships. *Clem v. Steveco, Inc.,* 450 N.E.2d 550, 555 (Ind.Ct.App. 1983). . . . [Other courts have found] that principal-agency theories are inapposite since an employee could not recover against a principal if worker's compensation benefits had already been paid through the agent. . . . [T]he closest analogy is that of employer-independent contractor series of cases.

■ We agree with both the district court's analysis and conclusion that the best method for determining the existence of a franchisor's duty of security to its franchisee's employee is by an analogy to employer-independent contractor law. As noted by another court considering this issue:

> None of [the other] analogies are on point because, with the exception of the employer-independent contractor relationship, all of the relationships are based, to an extent, on agency principles. Only the employer-independent contractor area carries some sort of direct connection which could be

ingly, and since resolution of the issue is not necessary for disposition of this case, we do not determine whether a franchisee's employee is such a business visitor within the meaning of Restatement (Second) Torts Section 344. *See Thrasher v. Gerken,* 309 N.W.2d 488, 489 (Iowa 1981) (Construction worker and employee of independent contractor was not a business invitee

of landowner under Restatement (Second) of Torts Sections 343 and 343A as a matter of law.). *But see Downs v. A & H Constr., Ltd.,* 481 N.W.2d 520, 524 (Iowa 1992) ("[W]e have consistently held that an employee of a subcontractor is a business invitee" under Restatement (Second) of Torts Section 343.).

analogized to the franchisor-injured franchisee employee relationship. *Steveco*, 450 N.E.2d at 555. Other jurisdictions which have faced the issue also support using the employer-independent contractor analogy in determining whether a franchisor owes a duty to its franchisee's employee. *See Wise v. Kentucky Fried Chicken Corp.*, 555 F.Supp. 991, ·994–95 (D.N.H.1983) (Where plaintiff seeks to hold franchisor primarily liable for franchisee's employee's injuries, likening the franchisor-injured franchisee employee relationship to that between an employer and an independent contractor and relying on Restatement (Second) of Torts Section 414 seem most appropriate.); *Coty v. U.S. Slicing Mach. Co.*, 58 Ill.App.3d 237, 242, 15 Ill.Dec. 687, 690, 373 N.E.2d 1371, 1375 (1978) (In examining the responsibility of the owner of a franchise trademark for the torts of its franchisee, the general rationale behind the employer-independent contractor cases can be applied although the cases themselves are somewhat inapposite.).

■ IV. *The nature of the franchisor's retained control as the standard under Restatement sections 344 and 414.* Whether a franchisor owes a duty of care to its franchisee's employee under either Restatement (Second) of Torts Section 344, urged by the plaintiff, or Section 414, relied upon by the district court, turns on the extent of the franchisor's retained control over the property and the daily operation of the restaurant, respectively.

Under section 344, whether a person is a "possessor" of land is a threshold issue to determination of liability. *Galloway v. Bankers Trust Co.*, 420 N.W.2d 437, 441 (Iowa 1988). Whether a person is a possessor is in turn determined by the extent of the person's retained control of the property. Restatement (Second) of Torts § 328E; *Downs*, 481 N.W.2d at 524. Section 328E defines a possessor of land in relevant part as "a person who is in occupation of the land with intent to control it." In interpreting this section of the Restatement, we have stated that "the mere fact of ownership is not sufficient to impose liability." *Galloway*, 420 N.W.2d at 441. Rather, "[w]ho is a possessor of land ... depends primarily upon the

amount of control that a particular person exercises over the property." *Downs*, 481 N.W.2d at 524.

Similarly, under the preferable section for purposes of analysis, Restatement section 414, the employer's control of the daily operation of the business determines its obligation and thus its liability. Comment *c* to Restatement (Second) of Torts section 414 states:

> *c.* In order for the rule stated in ... Section [414] to apply, the employer *must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations.* Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

(Emphasis added.)

As the trial court put it:

> In these cases, the Court must look to whether or not an employer who entrusts work to an independent contractor retains control of any part of the work or workplace which would subject to the employer a duty to exercise reasonable care, a failure of which could result in tort liability.

■ Our application of this retained control standard in the context of employer-independent contractor law has resulted in imposition of a duty of care only when the employer retains control of day-to-day operations. *See Farris v. General Growth Dev. Corp.*, 354 N.W.2d 251, 253–54 (Iowa App. 1984). The employer's retention of the right to inspect the quality of the operation and of control over the work to the extent necessary to implement that right will not give rise to a legal duty. *Porter v. Iowa Power & Light Co.*, 217 N.W.2d 221, 229, 230 (Iowa 1974).

■ Since we have approved of the employer-independent contractor analogy as the focus for determining whether a franchisor owes a duty of care to its franchisee's employee, we likewise adopt the concomitant retained control test. The rationale behind the retained control test, that a duty should be imposed upon the person who can remedy an unsafe procedure or who can prevent an unsafe practice, applies equally to the franchisor-injured franchisee's employee relationship.

Other jurisdictions adopting the employer-independent contractor analogy also agree that the test for the existence of a franchisor's duty of care to its franchisee's employee is the extent of the franchisor's control of the daily operation of the business. *See Coty,* 58 Ill.App.3d at 242, 15 Ill.Dec. at 690, 373 N.E.2d at 1375 (The general control rationale of employer-independent contractor cases "can be applied to the franchise cases."); *see also Wise,* 555 F.Supp. at 995 ("Control" is a decisive factor in employer-independent contractor cases and thus in franchisor-injured franchisee's employee cases.); *Steveco,* 450 N.E.2d at 555 (Whether franchisor owed an independent duty to the franchisee's employee depends on "the degree of control or direction the franchisor retained.").

■ Plaintiff agrees that retained control is the applicable standard but argues that the issue of control is a factual issue to be decided by a jury rather than a part of the legal duty issue to be decided by the court. The district court concluded differently, stating that:

> It would be wrong to let a jury speculate on what a franchisor might be able to do under any conceivable set of circumstances. The Court cannot imagine submitting these facts to a jury and allowing the jury to speculate on the franchisor's liability. If the issue of control by a franchisor is *always* a question of fact, a franchisor will be put in an impossible position.

We agree with the district court that the issue of retained control is inescapably part of the duty issue, which is necessarily and properly determined as a matter of law by the court. *See Davis v. Kwik–Shop, Inc.,* 504 N.W.2d 877, 879 (Iowa 1993) (Court rejected plaintiffs' argument that a factual issue existed and determined defendant had no duty as a matter of law.); *Downs,* 481 N.W.2d at 522 ("Whether a duty exists is a question of law." (quoting *Richenberger,* 456 N.W.2d at 207)); *Shaw,* 463 N.W.2d at 53 (same).

■ V. *Extent of franchisor McDonald's retained control over the operations and the property of the restaurant.* The district court concluded as a matter of law that McDonald's did not retain sufficient control over the operations of the restaurant to impose a duty of security upon the franchisor owing to its franchisee's employee.[2] We agree.

The franchisee, the Mrozinskis, rather than the franchisor, McDonald's, has the power to control the details of the restaurant's day-to-day operation. The Mrozinskis own the business equipment, operate the business, hold the operating licenses and permits, determine the wages, and provide the basic daily training and insurance for the franchisee's employees. The Mrozinskis, not McDonald's, hire, fire, supervise and discipline the franchisee's employees.

On the other hand, McDonald's simply has the authority to require the franchisee to adhere to the "McDonald's system," to adopt and use McDonald's business manuals, and to follow other general guidelines outlined by McDonald's.

With these relative powers of the franchisor and the franchisee in mind, we conclude that McDonald's authority is no more than the authority to insure "the uniformity and standardization of products and services offered by a [franchisor's] restaurant. [Such] obligations do not affect the control of daily operations." *See Little v. Howard Johnson Co.,* 183 Mich.App. 675, 682, 455 N.W.2d 390, 394 (1990).

The district court reached the same conclusion, stating:

> In the instant case, the day-to-day control of the employees was handled by the fran-

---

**2.** The district court only specifically addressed section 414 of the Restatement. We also address section 344 of the Restatement, which is asserted by plaintiff.

chisee, not the franchisor. The general right of supervision by the franchisor to see that business is conducted in a generally uniform manner cannot mean the franchisor in this case is responsible if a co-employee did not call the police immediately upon returning into the restaurant. . . . Here, the actions or inactions of the employee come under the day-to-day control of the franchisee.

Other jurisdictions facing similar factual situations are in accord. *See Coty,* 58 Ill. App.3d at 242, 15 Ill.Dec. at 691, 373 N.E.2d at 1376 (Franchisor not liable for its franchisee's employee's work-related injuries under either agency or employer-independent contractor theories because franchisor's general right to rescind the contract was insufficient retained control.); *Barnes v. Wendy's Int'l, Inc.,* 857 S.W.2d 728, 730 (Tex.Ct.App.1993) (Franchisor's reservation in agreement of a right to re-enter premises in case of default did not give rise to a duty of care to franchisee's employee for injuries suffered from a fall in restaurant.). *Cf. Little,* 183 Mich.App. at 682, 455 N.W.2d at 394 (Although franchisor had the right to conduct inspections and to hold franchisee in breach of agreement, franchisor did not possess sufficient control over daily operations to render it vicariously liable for customer's injuries caused by a slip and fall on the restaurant's premises.); *Hayman v. Ramada Inn, Inc.,* 86 N.C.App. 274, 357 S.E.2d 394, 397 (1987) (Franchisor who retained ability to require franchisee to comply with standards but not ability to fire and hire franchisee employees did not control day-to-day operations of motel and thus was not vicariously liable for guest's injuries resulting from third party assault.). *Compare Martin v. McDonald's Corp.,* 213 Ill.App.3d 487, 157 Ill.Dec. 609, 613–14, 572 N.E.2d 1073, 1077–78 (1991) (Since franchisor "undertook to provide security and protection to [franchisee's employees]," franchisor voluntarily assumed a duty to provide security and to protect against criminal acts of third parties even though no such duty was otherwise imposed by law.).

█ We also conclude that McDonald's retained authority does not establish sufficient control of the property to render McDonald's a "possessor" of land for the purposes of section 344 of the Restatement. We, along with other courts, have previously reached the same conclusion when presented with similar facts. *See Downs,* 481 N.W.2d at 522, 524 (General contractor's duties of inspecting progress of subcontractors' work, receiving reports, making suggestions or recommendations, and directing that work be stopped or resumed were not substantial enough retained control to render it a possessor of land under Restatement (Second) of Torts Section 328E.); *Little,* 183 Mich.App. at 678–79, 455 N.W.2d at 392 (Franchisor's holding title ownership of the property without occupation or control of the land was not sufficient to deem the franchisor a possessor of the premises for the purpose of assessing direct liability to an invitee.).

VI. *Conclusion.* For the reasons stated above, we agree with the district court that Restatement (Second) of Torts Section 414 does not impose a duty of security on defendant franchisor to plaintiff, its franchisee's employee. Likewise, we conclude that defendant is not a "possessor" of land under Restatement (Second) of Torts Section 328E and thereby incurs no duty of security to plaintiff under Restatement section 344.

The district court correctly granted defendant's motion for summary judgment.

**AFFIRMED.**