HECHT, Justice
(concurring in part and dissenting in part).
While I agree with the majority’s conclusion that Nikkei does not owe a special duty under the Restatement (Second) of Torts section 384, the majority’s analysis of the general duty question demonstrates a fundamental misunderstanding of the distinction between duty and scope of liability and results in a conflation of the two issues.
The confusion is highlighted in the opening paragraph when the majority couches the issue as “whether a subcontractor that properly performs electrical work on a job-site, then locks up the work and transfers control to the property owner, owes a duty of care to an employee of the owner electrocuted six days later when the owner fails to deenergize the work site in contravention of various warnings and regulations.” “When liability depends on factors specific to an individual case, the appropriate analytical rubric is scope of liability.” Restatement (Third) of Torts: Liab. for Physical and Emotional Harm § 7 cmt. a, at 78 (2010) [hereinafter Restatement (Third)]. In this case, the majority’s rationale is substantially based on specific facts: that Nikkei had been absent from the work site for approximately a week before McCormick’s injury; that Nikkei had locked the switchgear cabinet before leaving; that a hazard decal was visible on the switchgear cabinet; that Little Sioux was in control of the property at the time of the injury; and that McCormick failed to follow safety procedures confirming that the switchgear was not energized before attempting to work on it. While these factual considerations are, of course, relevant to the scope of liability issue, that issue was not raised in the district court or on appeal, and the majority does not purport to engage in an analysis of the scope of Nikkei’s liability. Rather, the majority relies on these factual, case-specific details in its duty analysis.
On the other hand, an appropriate duty analysis “depends on factors applicable to categories of actors or patterns of conduct.” Id. “As a general rule, our law recognizes that every person owes a duty to exercise reasonable care to avoid causing injuries to others.” Feld v. Borkowski, 790 N.W.2d 72, 75 (Iowa 2010). “Thus, in most cases involving physical harm, courts ‘need not concern themselves with the existence or content of this ordinary duty,’ but instead may proceed directly to the elements of liability.” Thompson v. Kaczinski, 774 N.W.2d 829, 834 (Iowa 2009) (quoting Restatement (Third) of Torts: Liab. for Physical Harm § 7(a), at 90 (Pro *378 posed Final Draft No. 1, 2005)). Only in “exceptional” cases, when the court can promulgate relatively clear, categorical, bright-line rules of law applicable to a particular class of cases should the court modify or displace an actor’s general duty of reasonable care. Id. at 835. The majority’s conclusion that “a subcontractor that properly performs electrical work on a jobsite, then locks up the work and transfers control to the property owner [does not owe] a duty to an employee of the owner electrocuted six days later when the owner fails to deenergize the work site in contravention of various warnings and regulations” is not a clear, bright-line rule of law applicable to a particular class of cases.[6]
Long before this court adopted the Restatement (Third) formulation of duty in Thompson v. Kaczinski, it was well established in this jurisdiction that the duty of contractors to exercise reasonable care does not evaporate with the completion of the contractor’s work. See Kragel v. Wal-Mart Stores, Inc., 537 N.W.2d 699, 707 (Iowa 1995) (“Our case law holds that the independent contractor remains liable even after the contractor’s employer accepts the work.”) (citing Restatement (Second) of Torts, § 385 (1965)); Thompson v. Burke Eng’g Sales Co., 252 Iowa 146, 154-55, 106 N.W.2d 351, 356-57 (1960). Despite the majority’s characterization of the reasoning in Burke Engineering, we made quite clear the contractor’s duty of care does not derive from possession or control of land. It is instead a discrete duty arising from the creation of a risk of injury and extends temporally beyond the completion of the contractor’s work and the owner’s acceptance of it. Burke Eng’g, 252 Iowa at 154-55, 106 N.W.2d at 356-57.[7]
This duty of a contractor to exercise reasonable care is not, as the majority opinion suggests, one that arises only when the contractor does bad or defective work. The duty arises instead whenever a risk of injury to others arises from the contractor’s work without regard to whether the work is performed badly. This principle explains why a motorist owes a duty of care to others while driving (not just when driving badly), and it explains why a surgeon owes a duty of care while performing surgery (not just when operating badly). The question of whether the driver or the surgeon has failed to use reasonable care under the circumstances addresses not whether a duty was owed in the first place, but whether that duty was *379 breached. The majority’s construct — concluding a contractor owes a duty of reasonable care only if he performs “defective work” — seems to make the existence of a duty turn on whether the contractor failed to exercise reasonable care. This is a novel approach to tort law. The majority’s finding that Nikkei’s acts or omissions did not constitute “defective work” is tantamount to a determination that Nikkei exercised reasonable care, yet it serves as the foundation for the majority’s conclusion that Nikkei owed McCormick no duty. This is simply wrong. The existence of Nikkei’s duty turns on whether it created a risk of injury when it energized the switchgear boxes before leaving the work site without notifying Konwinski — not on whether it connected the wires to the swit-chgears badly.
The well-established duty of care owed by contractors noted in our decisions in Burke Engineering and Kragel and expressed in Restatement (Second) of Torts section 385 was carried forward into the Restatement (Third). The contractor’s general duty of care does not arise as a function of continuing possession and control of land, for the contractor’s possession and control generally cease upon completion of the work. Having relinquished possession and control of the land, the contractor nonetheless owes the ordinary duty of reasonable care for risks created by the contractor’s work.[8] A contractor who has completed work and is no longer in possession of the land is “subject to the ordinary duty for risks created by their work under § 7.” Restatement (Third) § 49 cmt. g, at 10 (Tentative Draft No. 6, 2009).
Section 385 of the first two Restatements of Torts provide that an agent who has completed work that is accepted by the principal is subject to the same liability as a manufacturer of a chattel who has given up possession of the chattel. This oblique way of imposing a duty of reasonable care on contractors whose work was completed reflects the waning influence of the privity doctrine, which limited a contractor’s liability to those with whom the contractor was in privity of contract. After the privity rule was left behind beginning with MacPherson v. Buick Motor Co. [217 N.Y. 382], 111 N.E. 1050, 1053 (N.Y.1916), the liability of a chattel manufacturer extended to others beyond the person who purchased the chattel. Similar to the privity doctrine, the “completion and acceptance” doctrine insulated a contractor who completed construction on real property and turned the completed work over to the owner. With the abrogation of privity, that rule was also replaced.... Numerous modern cases accept the rule of § 385.
Restatement (Third) § 49 rep. note to cmt. g, at 17 (Tentative Draft No. 6, 2009).
*380 Thus, this general duty of care extending beyond the completion of a contractor’s work is clearly not a novel or revolutionary concept of law in this jurisdiction. It is a rule of law recognized in prior decisions of this court for more than fifty years, expressed by the Restatement (Second) of Torts as a principle of established law, and more recently restated in the Restatement (Third) of Torts.
Accordingly, even if Nikkei did not owe to McCormick any special duties as a possessor of land, or as a contractor temporarily in control of the construction site, it still owed a general duty of reasonable care under section 7 of the Restatement (Third) because it created a risk of severe injury or death by energizing the swit-chgears and failing to notify Konwinski as requested. The determination of whether this duty of care was breached by Nikkei and whether McCormick’s injuries were within the applicable scope of liability are matters of foreseeability to be determined not by the court on summary judgment, but by a jury.[9] The majority opinion, emphasizing that the switchgear cabinet was adorned with a decal warning of the electrical hazard and locked by Peterson before he left the work site, and that Little Sioux’s employees failed to follow lockout/tag procedures on the day of McCormick’s injury, confounds the duty analysis under section 7 of the Restatement (Third) with foreseeability considerations relevant to the issues of breach of the general duty and scope of liability. As I have already noted, Nikkei’s motion for summary judgment claimed entitlement to summary judgment solely on the duty issue — not on the issues of breach of duty or scope of liability.
The majority cites this court’s decision in Van Fossen v. MidAmerican Energy Co., 777 N.W.2d 689 (Iowa 2009), in support of its position that Nikkei owed no general duty of care to McCormick under the facts presented in the summary judgment record. In Van Fossen, we decided the owner of a power plant who was not in possession of a construction site owed no general duty of care to the wife of an independent construction contractor’s employee who was exposed to asbestos and carried it home on his clothing. Van Fossen, 777 N.W.2d at 696-97. Nikkei argues, and the majority concludes, that the no-duty rule adopted in Van Fossen was based on the notion that the power plant owner did not retain control of the construction site and the associated asbestos exposure risk while the contractor performed its work.
I believe Van Fossen is distinguishable both in terms of the facts presented and the legal issues decided, and it is neither controlling nor instructive in the resolution of the duty issue in this case. In Van Fossen we were asked to decide whether the owner of a power plant owed a duty of care to the spouse of an employee of a construction subcontractor who was allegedly exposed to asbestos while laundering her husband’s clothes at home. Id. at 691. In sharp contrast, the parties in the case now before the court ask us to decide whether a construction subcontractor owed a duty of care to an employee of the owner as a consequence of a risk of severe injury or death created at the construction site by the subcontractor’s own work. In short, the stark factual differences in the facts presented in the two cases, the asymmetry of the roles played by the defendant actors in the construction projects in the two *381 cases, and the obvious dissimilarities in the respective defendants’ involvement in the creation of the alleged risks of injury in the two cases lead us to conclude the no-duty rule enunciated in Van Fossen should have no application in this case.
Beyond the fact that Van Fossen is clearly distinguishable and not instructive in our resolution of the general duty issue in this case, the majority misapprehends the reasoning in Van Fossen. Although we noted that the record in that case was “devoid of evidence tending to prove [the plant owners] exercised control over [the work of them contractors],” the decision to recognize a no-duty rule was based on “ ‘an articulated countervailing principle or policy warranting] den[ial of] ... liability in a particular class of cases.’ ” Id. at 696 (quoting Restatement (Third) § 7(b), at 90 (Proposed Final Draft No. 1, 2005)) (emphasis added).[10] We recognized that our determination of a no-duty rule reflected the “realities of the relationship between employers and their contractors [including the reality] that employers often have limited, if any, control over the work performed by their contractors.” Id. at 698. However, our decision was also based on the remoteness of the plant owners from the spouse of an employee of an independent contractor. Id. at 699. We expressed concern that imposing a general duty of reasonable care on the employer of a contractor extending to the spouse of the contractor’s employee under the circumstances presented in Van Fossen “would arguably also justify a rule extending the duty to a large universe of other potential plaintiffs who never visited the employers’ premises but came into contact with a contractor’s employee’s asbestos-tainted clothing [in various other remote settings].” Id. This large universe of other potential plaintiffs could have included taxi drivers, employees of dry-cleaning establishments, and others having no connection whatsoever to the plant-owner’s premises. We concluded “such a dramatic expansion of liability would be incompatible with public policy.” Id. However, I believe our policy concerns in Van Fossen militating against the imposition of a duty upon the landowner are not present in this case. McCormick’s claim for damages is asserted against a construction subcontractor whose own acts or omissions are alleged to have created a risk of injury to its employer’s employee at the construction site. As I have already noted, the existence of the duty of care owed by subcontractors as a consequence of risks of injury they create at construction sites is already well established in Iowa law. Accordingly, I believe this case does not present, as Van Fossen did, an exceptional situation in which a no-duty rule would be appropriate.
The majority also relies on our decision in Robinson v. Poured Walls of Iowa, Inc., 558 N.W.2d 873 (Iowa 1996), as authority for its conclusion that Nikkei owed no general duty to exercise reasonable care under the circumstances of this case. In that case, Poured Walls of Iowa hired an independent contractor, Jack Spaw, to excavate a sewer line. Robinson, 553 N.W.2d at 874. Spaw employed Robinson *382 who was injured while doing the work. Id. at 874-75. Robinson sued Poured Walls of Iowa claiming the contractor violated special duties under Restatement (Second) of Torts sections 343 (duty owed by possessors of land for injuries sustained by invitees), 413 (duty owed by employer of independent contractor hired to perform work creating a “peculiar unreasonable risk of physical harm”), and 427 (duty of employer of independent contractor hired to perform work “involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work”). Id. at 875. The plaintiffs in Robinson did not claim that the contractor, Poured Walls of Iowa, owed a general duty to exercise reasonable care because it created a risk of injury to others through its own acts or omissions at the work site. They instead alleged the contractor violated only special duties which were allocated based on possession and control under the Restatement (Second) of Torts. Id. Simply put, our decision in Robinson did not address the general duty of care alleged by the McCormicks and is therefore not on point. This is also true of the other decisions of this court cited today by the majority opinion. See Hoffnagle v. McDonald’s Corp., 522 N.W.2d 808, 815 (Iowa 1994) (franchisor owed no special duty to provide security against assaults by third parties on franchisee’s property under Restatement (Second) of Torts sections 344 and 414 because franchisor lacked control); Downs v. A & H Constr., Ltd., 481 N.W.2d 520, 524-27 (Iowa 1992) (contractor owed no special duty to an employee of a roofing subcontractor under Restatement (Second) sections 328E, 343 and 414 because the contractor did not retain sufficient control of the subcontractor’s work). Although these precedents are authority for the proposition that Nikkei owed no special duty to McCormick under the circumstances presented in this case, they are not dispositive of the general duty issue under section 7 of the Restatement (Third) adopted by this court in Thompson.
We should not fear the salutary effect of the general duty of reasonable care adopted by this court in Thompson. It is a positive force. I find no articulated countervailing principle or policy that warrants denying or limiting the liability of electrical contractors as a class of actors for risks of injury created by their own acts or omissions at a construction site. Although Nikkei did not control the construction site or the particular task performed by McCormick at the time of his injury, the McCormicks contend Nikkei owed a general duty to exercise reasonable care when it energized the switchgears and failed to inform Konwinski despite having been asked to do so.[11]
The majority’s decision today recognizes a no-duty rule for what it characterizes as “a class of cases” in which a contractor has effected a complete transfer of control of the premises to another. Acknowledging that there may be fact questions in certain cases about the extent of the transfer of control and whether the contractor has performed defective work, the majority effectively concedes that the existence of a duty will turn on fact questions in particu *383 lar cases. On this point, the majority confuses its duty analysis with the analysis of scope of liability. “When liability depends on factors specific to an individual case, the appropriate rubric is scope of liability.” Restatement (Third) § 7 cmt. a, at 78.
Whether Nikkei exercised reasonable care under the circumstances by locking the cabinet, relying on warnings posted on the cabinet, and expecting Little Sioux employees to follow mandatory OSHA and company safety policies, are matters related to foreseeability, breach of duty, and scope of liability — all issues properly reserved for a jury’s assessment. Accordingly, I would reverse and remand for trial.
WIGGINS and APPEL, JJ„ join this concurrence in part and dissent in part.

. The majority’s opinion reasons in part that it would be inefficient or impractical to impose liability on an electrical contractor who has energized a switchgear cabinet and locked it before leaving the work site. Fearing “burdens and inconveniences to businesses and the general public” if contractors are required to turn off utilities posing a risk of injury before leaving a work site, the majority would excuse contractors from the general duty of reasonable care under section 7. I am not convinced. Why should we conclude it would have been burdensome for Nikkei to deenergize the switchgear box before leaving the work site? Such a course of action would have assured Nikkei that it created no risk of harm to persons it expected to work on the fault indicator brackets in the near future. If Little Sioux wished to energize the loop before Nikkei returned to finish its work, it could do so and take responsibility for any resulting risk. Of course, a fact finder could determine Nikkei had options other than deenergizing the switchgears in fulfilling its general duty of reasonable care, such as honoring Konwinski's request that he be notified when the switchgears were energized.

. It is apparent that the range of conduct engendering the general duty of care owed by a contractor is not limited to supplying inherently defective products posing latent hazards. Kragel, for example, makes clear that the duty is owed by a contractor who creates a risk of injury to pedestrians when clearing snow and ice from a shopping center’s parking lot. Kragel, 537 N.W.2d at 707.

. This distinction is crucial to the extent it explains why cases asserting negligence claims against land owners, Merritt v. Bethlehem Steel Corp., 875 F.2d 603 (7th Cir.1989), and Wells v. Gen. Elec. Co., 807 F.Supp. 1202 (D.Md.1992); electric utilities, Jackson v. Petit Jean Elec. Co-op., 270 Ark. 506, 606 S.W.2d 66 (1980), and Durbin v. Culberson Cnty., 132 S.W.3d 650 (Tex.Ct.App.2004); contractors, Groover v. Camp Dresser & McKee, Inc., 420 Fed.Appx. 358 (5th Cir.2011), Robinson v. Poured Walls of Iowa, Inc., 553 N.W.2d 873 (Iowa 1996), and Downs v. A & H Constr., Ltd., 481 N.W.2d 520 (Iowa 1992); a landlord, Van Essen v. McCormick Enters. Co., 599 N.W.2d 716 (Iowa 1999); and a vendor of coffee makers and coffee, Edick v. Paul de Lima Co., Inc., 6 A.D.3d 864, 775 N.Y.S.2d 385 (2004), cited by the majority are neither dispositive of the general duty issue nor persuasive in this case. None of these cases asserted, as the McCormicks do in this case, that a subcontractor owed a general duty of care under section 7 as a consequence of the subcontractor’s own creation of a risk of serious injury or death at a construction site.

. Foreseeability of the risk is no longer a part of the duty analysis and is allocated to the fact finder, “to be considered when the jury decides if the defendant failed to exercise reasonable care.” Thompson, 774 N.W.2d at 835.

. Our holding was not merely that MidAmer-ican owed no duty to Mrs. Van Fossen, but that "[o]ne who employs an independent contractor owes no general duty of reasonable care to a member of the household of an employee of the independent contractor.” Van Fossen, 777 N.W.2d at 696. Mrs. Van Fossen had never visited the defendant's construction site. Id. at 699. Our decision in Van Fossen was "a determination, a purely legal question, that no liability should be imposed on actors in a category of cases.” Restatement (Third), § 7 cmt. /, at 82 (emphasis added). It was not an individualized forseea-bility-based determination that no general duty of care was owed to Mrs. Van Fossen because MidAmerican lacked possession or control of the construction site.

. As I have already noted, the question of whether the McCormicks engendered a fact question as to whether Nikkei breached the duty of reasonable care by failing to give notice to Little Sioux that the switchgears were energized or by failing to take other action to eliminate the risk of injury was not decided by the district court and is therefore not a matter before this court on appeal. Similarly, Nikkei's motion for summary judgment did not raise the question whether a fact issue is engendered in the summary judgment record as to whether any injuries sustained by the McCormicks were within the scope of Nikkei’s liability.