Marc LUNDE, Appellant,

v.

WINNEBAGO INDUSTRIES,
INC., Appellee.

WINNEBAGO INDUSTRIES, INC.,
Cross–Petitioner,

v.

HENNINGSEN STEEL PRODUCTS CO.,
INC., Defendant to Cross–Petition.

No. 64130.

Supreme Court of Iowa.

Dec. 17, 1980.

Rehearing Denied Jan. 9, 1981.

James C. Ellefson of Lundy, Butler & Lundy, Eldora, for appellant.

Larry Cohrt of Swisher & Cohrt, Waterloo, for appellee.

LARSON, Justice.

Marc Lunde was an employee of a contractor retained by the appellee Winnebago Industries, Inc. to construct a building on its premises. During the construction process Lunde was injured, and he brought an action against several parties, including Winnebago.[1] A jury verdict in favor of Lunde was set aside by the trial court and a judgment notwithstanding the verdict was entered on behalf of Winnebago. Lunde's appeal and Winnebago's cross–appeal followed. We affirm the trial court on Lunde's appeal, thus rendering the cross–appeal moot.

Lunde's employer, Henningsen Steel Products Company, Inc., had contracted with Winnebago to construct a steel frame building known as the "plastics plant," on Winnebago's premises. Pursuant to the contract, Henningsen was required to initiate, maintain, and supervise all safety procedures in connection with the project, and to comply with all applicable safety laws, rules and regulations.

Other than its expanse, the plastics plant possessed no unusual features. The building roughly measured 180 feet by 360 feet. It was approximately twenty–eight feet high at the peak and twenty–one to twenty-four feet at the outer walls. An addition was erected and joined to the main building. The roof, having a pitch of one inch fall per twelve inches of horizontal run at the point of Lunde's fall, consisted of thin, corrugated sheet metal panels laid in a grid pattern, which were attached with metal screws to steel purlins. Prior to Lunde's accident, the roof panels had been laid so that there was an overhang or cantilever of the thin metal, extending over the outside wall of the building one to one-and-a-half feet. Lacking vertical support, this overhang could not support a man's weight.

On the day of his injury, Lunde was attaching the roof panels to the purlins, continuing up and down the slope of the roof, as part of a two-man operation. While another Henningsen employee drilled holes into the purlins, Lunde followed, screwing down the panels with an impact wrench. As the two workers approached the edge of the building in attaching the first line of roof panels, the other employee

---

1. Winnebago cross–petitioned against Lunde's employer, Henningsen Steel Products Co., Inc., for indemnity, but the trial court continued that aspect of the case pending the outcome of Lunde's claim against Winnebago. The indemnity action is not involved in this appeal.

moved on to an adjacent purlin and began drilling. Lunde, apparently unaware of his location, continued further down the slope of the roof onto the unsupported portion of the last panel and fell approximately twenty–five feet to a blacktop surface.

Lunde's suit against Winnebago alleged negligence of Henningsen is failing to employ safety netting, lifelines, scaffolding, and other precautions. He contended that Winnebago, as owner of the building, was liable for his injuries, despite his status as an employee of an independent contractor based, in the alternative, upon (1) the fact he was engaged in work "likely to create . . . a peculiar risk of physical harm," under Restatement (Second) of Torts § 416 (1965), or (2) his status as a business invitee, *Greenwell v. Meredith Corp.*, 189 N.W.2d 901 (Iowa 1971).

■ I. *Claim under Restatement theory.* We must first consider whether Lunde's "peculiar risk" theory is an issue of fact or law. Lunde contends the trial court erred in granting the motion for judgment notwithstanding the verdict because liability of Winnebago was a matter for the jury and not the court. However, the question is whether, under these facts, a property owner owed a *duty* to an employee of an independent contractor. This is a legal question. *See Porter v. Iowa Power & Light Co.*, 217 N.W.2d 221, at 232–33 (refusal to submit instructions under section 416 upheld); *Snider v. Northern States Power Co.*, 81 Wis.2d 224, 231, 260 N.W.2d 260, 263 (1977).

■ The general rule is that an employer of an independent contractor is not vicariously liable for injuries arising out of the contractor's negligence. Although various reasons have been suggested as the basis for this rule, the commonly–accepted reasoning is the lack of control by the employer over the details of the contractor's work. W. Prosser, Handbook of the Law of Torts § 71, at 468 (4th ed. 1971). In the present

case, however, Lunde claims that due to the dangerous nature of the work in which he was engaged his injury falls within an exception to the general rule, set forth in the Restatement of Torts:

> One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress the peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

Restatement (Second) of Torts § 416, at 395 (1965). We adopted section 416 in *Giarratano v. Weitz Co., Inc.*, 259 Iowa 1292, 147 N.W.2d 824 (1967). Liability under section 416 does not turn upon the employer's negligence, but upon vicarious liability; the negligence of the independent contractor is imputed to the owner in the same manner as if the contractor were its employee. Restatement (Second), *supra* § 416, Introductory Note, at 394.[2]

The obvious problem in applying section 416 is in deciding what constitutes a "peculiar risk of physical harm to others unless special precautions are taken." Lunde contends that working at a height of approximately twenty–five feet on a building was a peculiar risk unless the "special precautions" of scaffolding, nets, or "lifelines" were provided by Henningsen. Winnebago, however, contends that the risk of a fall in this case was not the "peculiar risk of physical harm" envisioned in the exception.

The Restatement sheds some light on the meaning of these simply phrased, yet troublesome, criteria of section 416:

> [The "peculiar risk" exception] has no reference to such a general anticipation of the possibility that the contractor may in some way be negligent. *It is not concerned with the taking of routine precau-*

2. Winnebago contends that an employee of an independent contractor is not one of the "others" covered by section 416 and urges us to re–examine our holding to that effect in *Giarra-* *tano v. Weitz Co., Inc.*, 259 Iowa 1292, 147 N.W.2d 824 (1967). Under our disposition of this case it is not necessary to reach that issue.

*tions,* other than the kind which any careful contractor could reasonably be expected to take, *against all the ordinary and customary dangers which may arise in the course of the contemplated work.* Such precautions are the responsibility of the contractor . . . .

Restatement (Second), *supra,* § 413, Comment *b* at 385 (emphasis added).[3] A discussion of the application of section 416 in building and demolition cases is also provided:

> An independent contractor is often employed to do a piece of work which, as it progresses, is *likely* to involve the creation of a dangerous condition unless special precautions are taken to prevent the dangerous condition from existing, or to make it harmless after it is created.

*Id.,* Comment *c,* at 386 (emphasis added). Demolition of a building without taking precautions to prevent the fall of a free-standing wall, excavations immediately adjoining a public highway without protective fencing, and digging a ditch in a public place without warning lights are cited as examples of projects which might result in liability of the employer of an independent contractor under section 416 because of the likelihood of injury. *Id.,* § 416 Comment *c,* Illustrations 1, 2, at 396.

Comment *d* to section 416 states "it is not essential that the work which the contractor is employed to do be in itself an extra-hazardous or abnormally dangerous activity, or that it involve a very high degree of risk in the vicinity." *Id.* at 397. What is required is that the work be *"likely* to involve a peculiar risk of physical harm unless special precautions are taken," *id.* (emphasis added), and that it be "a risk which the employer should recognize as *likely* to arise in the course of the ordinary and usual method of doing the work, or the particular method which the employer knows that the contractor will adopt," *id.,* Comment *e,* at 397 (emphasis added).

The requirement that such a risk will likely attend the performance of the work seems to insert the element of foreseeability. In fact, one writer has proposed analysis of foreseeability as a basis for resolving issues of employer liability:

> Should there be lacking . . . in the entire operation itself or any portion thereof out of which the injury accrued the element of foreseeable harm to others in the normal conduct of the operation the employer should not be called upon to respond the negligence [of the independent contractor]. . . . If no unusual peril from the performance of the operation in the usual and practical manner is found to exist, no further question will arise. We may be certain in such cases that the act will be denominated a mere collateral act of negligence, even though it may have arisen from an act expressly ordered.

Smith, *Collateral Negligence,* 25 Minn.L. Rev. 399, 428 (1941) (footnotes omitted). Thus, if performance of work "in its normal manner" exposes others to undue risk of harm, an employer may be held liable for the acts of the independent contractor; the nature of the work itself suggests danger. On the other hand, if the nature of the work is such that performance of it in its usual manner would not expose others to unreasonable peril, the employer is not liable, even though acts of negligence are actually committed in the course of the job. Such torts are deemed to be "collateral" to the risk created by the nature of the work itself. *Id.* at 430; *accord, Carson v. Blodgett Construction Co.,* 189 Mo.App. 120, 126–27, 174 S.W. 447, 448 (1915). The *Carson* court explained the distinction in this way:

> In the one case the doing of the work creates danger and requires active care to counteract the danger. In the other there is no danger unless created by neg-

**3.** Section 413 of the Restatement, while similar to § 416, is inapplicable here because it provides a basis for liability of an employer "who fails to provide in the contract, or in some other manner, that the contractor shall take the required precautions." Restatement (Second), *supra,* § 413, Comment *a,* at 385. Such a provision was included in the contract between Winnebago and Henningsen, thus negating any liability on the part of Winnebago under § 413.

ligence. The one starts with danger and requires preventive care to make safety, while the other starts with safety and requires negligence to make danger.

*Carson v. Blodgett Construction Co., id.* at 126, 174 S.W. at 448.

■ The general rule is that ordinary building projects are not covered by the peculiar risk rule:

> Ordinary building operations or activities, including both construction and demolition, are generally not considered work of an inherently or intrinsically dangerous character rendering the employer–owner liable for injuries resulting from the negligence of an independent contractor in doing the work. But in specific cases, the circumstances may make the work so dangerous that the law will not permit the owner to escape liability even though the work is performed by an independent contractor, as, for example, the alteration of a four–story building to make one room on the ground floor by removing a portion of a brick wall which divided the building from foundation to roof and substituting iron columns to support the wall above; the demolition of a building in a crowded section of a city; and the construction of a skyscraper in a populous city.

41 Am.Jur.2d *Independent Contractors* § 43, at 810 (1969); *accord, Cutlip v. Lucky Stores, Inc.*, 22 Md.App. 673, 686, 325 A.2d 432, 438–40 (Ct.Spec.App.1974) (death caused by "either a defective concrete base and/or the failure to stabilize structural steel beams" employer not liable); *Elder v. Pacific Telephone & Telegraph Co.*, 66 Cal. App.3d 650, 658–60, 136 Cal.Rptr. 203, 206–07 (1977). In *Elder*, the plaintiffs were employed by an independent contractor and were engaged in the demolition of a concrete fire–escape landing. They stood on the landing while cutting away its steel support, and it fell. The court noted that, while several risks might attend the work, they did not arise from the nature of the project itself, and the employer was not liable under the "peculiar risk" theory:

In analyzing the risks involved here in the removal of the fire escape by the subcontractor we take cognizance of the fact that demolition work, in the abstract, is such as may be susceptible to the application of the peculiar risk doctrine. Indeed, it may even be conceded that there were a number of such risks present here calling for the exercise of special precautions by the subcontractor: the risk that workmen might fall from the second floor landing while engaged in the removal of the guard railing or ladders, calling for the use of special equipment such as harnesses or lifelines; or, the risk that the cement slab once freed from the building would break up as it was being lowered to the ground, necessitating other special precautions for the safety of those in the vicinity of this operation. However, the risk which was in fact realized was not one inherent in the nature of the specific demolition operation involved here. Rather, the injuries which befell plaintiffs Elder and Rogers were essentially the result of Elder's own negligence in "sawing off the limb" upon which they both were standing.

*Id.* at 660, 136 Cal.Rptr. at 207; *accord, Anderson v. Chancellor Western Oil Development Corp.*, 53 Cal.App.3d 235, 241–43, 125 Cal.Rptr. 640, 643–45 (1976) (fall of scaffold; risk held to arise from negligence in failing to secure, not from nature of work itself); *Beil v. San Antonio Amusement Co.*, 69 S.W.2d 833, 833–34 (Tex.Civ. App.1934) (employer of independent contractor not liable where contractor's workman, installing a sign over a sidewalk, dropped a chisel on the plaintiff: "the accident by which [plaintiff] was injured did not incur from the erection or repair of the sign, but from an act of negligence of one of the employees of the independent contractor employed to work on the sign"); *see Majestic Realty Associates v. Toti Contracting Co., Inc.*, 30 N.J. 425, 435–36, 153 A.2d 321, 326 (1959).

Applying these principles to Lunde's claim against Winnebago, we must determine whether the risks incurred inhered in the nature of the work itself, or from collat-

eral acts of negligence by Henningsen and its employees in carrying it out. What types of work by their very nature, involve a peculiar risk of harm so as to invoke the remedies of section 416 of the Restatement? One writer suggests this analysis:

> Probably all that can be done by way of classification is to use the most descriptive adjectives possible and speak of the work as conspicuously, exceptionally, unusually dangerous and the like, to signify that its salient characteristic is that the mention or sight of such work immediately causes the reaction "DANGER!" in the mind of the listener or witness in a way that other work, perhaps in fact equally dangerous, does not. Thus one observing a tree being cut down in a populous area or a heavy electric sign being put in place above a much-travelled street is instinctively impressed with the danger and the need for special precautions as he is not where he sees a neighbor's porch being painted, although he may be drenched the next moment with paint from a fallen bucket.

P. Mechem, Outlines of the Law of Agency § 488, at 336-37 (4th ed. 1952).

In *Porter v. Iowa Power & Light Co.*, 217 N.W.2d 221, 232-33 (Iowa 1974), an employee of an independent contractor was electrocuted when a crane operated by a fellow employee contacted a high-voltage power line. We noted that section 416 does not apply to "the taking of routine precautions . . . against ordinary and customary dangers," and concluded that the danger was not inherent in the work in which the decedent was engaged, street paving:

> We believe the presence near streets of electric transmission and distribution lines is a matter of common knowledge and a paving contractor can reasonably be expected to take precautions against contacting them. Hence we do not think that presence of the high line in the present case was a "peculiar risk" creating a nondelegable duty in the City to decedent under § 416.

*Giarratano v. Weitz Co., Inc.*, is distinguishable. It involved the installation of a gypsum roof eighty feet above the ground, and this court held that constituted a peculiar risk inherent in the nature of the work. 259 Iowa at 1306-08, 147 N.W.2d at 832-34.

The work involved here, at the height of approximately twenty-five feet, involves some degree of risk. But was such a risk inherent in the construction of the building because the project was "conspicuously, exceptionally, unusually dangerous . . . [with] the mention or sight of such work immediately caus[ing] the reaction 'DANGER!' . . ."? P. Mechem, Outlines of the Law of Agency, *supra*, at 336-37. We think not. Construction of the plastics plant fell within the classification of ordinary building operations, which are not generally considered to involve a peculiar risk. *See* 41 Am.Jur.2d, *supra*, at 810. The precautions which could have reduced this risk were routine and "which any careful contractor could reasonably [have been] expected to take, against all of the ordinary and customary dangers" inherent in the project. *Porter v. Iowa Power & Light Co.*, 217 N.W.2d at 232-33, *quoting* Restatement § 413, *supra*, Comment *b*, at 385.

Lunde contends Winnebago was bound to know "what special precautions were required under the circumstances" because regulations of the Occupational Safety and Health Act, 29 C.F.R. §§ 1518.104, 1518.105 (1979), require safety belts and nets. However, that act may not be applied to "enlarge or diminish or affect in any other manner" any common-law or statutory rights or duties of employers or employees. 29 U.S.C. § 653(b)(4) (1970); *Hare v. Federal Compress & Warehouse Co.*, 359 F.Supp. 214, 218 (D.C.Miss.1973) (O.S.H.A. violations could not be used to enlarge responsibility of owner under "peculiar risk" theory). In addition, we judicially note that the federal act and its implementing regulations are not addressed to employment involving peculiar risks but to day-to-day conditions involving sometimes minimal risk.

Moreover, if the height of the work alone was sufficient to make its performance subject to the peculiar risk doctrine, a home-

owner who employs a painting contractor might even be held liable to a painter's employee injured, as a result of the contractor's negligence, in a twenty–five foot fall from the homeowner's house. This illustrates the results which would be incurred in applying section 416 to projects not dangerous by their nature but in which hazards are introduced by the negligence of the contractor. We conclude in the present case that the trial court correctly ruled as a matter of law that Winnebago was not liable under the rationale of the peculiar risk doctrine.

■ II. *Failure to provide safe premises.* The trial court refused to submit requested instructions on the duty of a possessor of land to provide a safe premises for a business invitee, relying upon *Greenwall v. Meredith Corp.*, 189 N.W.2d 901 (Iowa 1971). *Greenwall*, however, involved sections 343 and 343A of the Restatement, which impose liability on "possessors" of land under certain circumstances. The Restatement provides that a "possessor of land" is

(a) a person who is in occupation of the land with intent to control it or

(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

Restatement (Second) of Torts § 328E at 170 (1965). Here, Winnebago was not a possessor of the land; it had relinquished occupation and control of it to Henningsen during the construction period.

Section 422 of the Restatement also discusses premises liability of owners, but deals with cases in which owners have employed independent contractors to perform work on the land.

A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure

(a) while the possessor has retained possession of the land during the progress of the work, or

(b) after he has resumed possession of the land upon its completion.

Restatement (Second) of Torts § 422, at 405 (1965).

Comment *c* to section 422 states, in part: The rule stated in this Section has no application to injuries occurring while the land is turned over to the contractor and he is in exclusive possession of it. Thus where the employer moves out of his building and surrenders it to the contractor while it is undergoing construction, demolition, or repair, there is no liability under the rule here stated, in such a case the employer [is not held] .... liable merely because of his ownership of the land, possession of which has been surrendered to the contractor. Possession usually is surrendered fully in the case of construction or demolition work....

■ The trial court ruled, and Winnebago now contends, that it had not retained possession of the property and section 422 is therefore inapplicable. Lunde claims that Winnebago, in effect, assumed the role of architect and therefore had the right of control on the project. However, the amount of an owner's involvement in overseeing the construction must be substantial in order to impose liability under a safe–premises theory:

[T]he control which an owner may exert in his general supervisory power over work done at his behest may be a broad general power of supervision without changing a relationship from employer–independent contractor to one of agency. "The owner may retain a broad general power of supervision and control as to the results of the work so as to insure satisfactory performance of the independent contract–including the right to inspect, the right to stop the work, the right to

make suggestions or recommendations as to details of the work, the right to prescribe alterations or deviations in the work,—without changing the relationship from that of owner and independent contractor or the duties arising from that relationship."

*Stilson v. Moulton–Niguel Water District,* 21 Cal.App.3d 928, 936, 98 Cal.Rptr. 914, 918 (1971), *quoting McDonald v. Shell Oil Co.,* 44 Cal.2d 785, 790, 285 P.2d 902, 904 (1955) (citations omitted). The evidence of control here falls short of that required and we conclude the trial court properly refused to instruct the jury on Winnebago's liability under his premises–liability theory.

We find no error and therefore affirm the trial court.

AFFIRMED.

All Justices concur except ALLBEE and SCHULTZ, JJ., who take no part.