# In the Iowa Supreme Court

No. 23–2092

Submitted January 20, 2026—Filed April 10, 2026

**Timothy Kono,**

Appellee,

vs.

**D.R. Horton, Inc.,** and **D.R. Horton-Iowa, LLC,** d/b/a **Classic Builders,**

Appellants,

**State of Iowa** ex rel. **Civil Reparations Trust Fund,**

Intervenor-Appellee.

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, judge.

General contractor appeals the denial of its motion for judgment notwithstanding the verdict on the basis that it did not owe a duty of care to the employee of a subcontractor. **Reversed.**

Oxley, J., delivered the opinion of the court, in which all participating justices joined. Christensen, C.J., took no part in the consideration or decision of the case.

Mark E. Weinhardt (argued), Danielle M. Shelton, and Jason R. Smith of Weinhardt & Lantz, P.C., Des Moines; Jodie C. McDougal and Brandon R. Underwood of Fredrikson & Byron, P.A., Des Moines; Michael J. Moreland (until withdrawal) of Harrison, Moreland, Webber & Simplot, P.C., Ottumwa, for appellant.

Ryan G. Koopmans (argued) of Koopmans Law Group, LLC, Des Moines; Bruce L. Braley of Leventhal Puga Braley P.C., Denver, Colorado; and R. Saffin Parrish-Sams of PSL Law, P.C., West Des Moines, for appellee.

Brenna Bird, Attorney General; Eric Wessan, Solicitor General; and Breanne A. Stoltze (argued), Assistant Solicitor General, for intervenor-appellee.

**Oxley, Justice.**

Tim Kono was working in a trench for a plumbing subcontractor when a wall of the trench collapsed. He was buried alive by an SUV-sized mound of dirt. Although he survived the incident, he suffered substantial emotional injuries as well as physical injuries that required multiple surgeries. Kono worked for Royal Plumbing, a subcontractor for a residential construction project in Polk City. The general contractor for the project, D.R. Horton,[1] hired Royal Plumbing to install water and sewer lines. While completing that work, Kono's supervisor at Royal Plumbing excavated a trench that failed to comply with Occupational Safety and Health Administration (OSHA) regulations, and the trench wall caved in on Kono as he installed the lines. Kono received workers' compensation and settled gross negligence claims against three of his Royal Plumbing co-employees.

This appeal is limited to Kono's negligence claim against D.R. Horton. A jury found D.R. Horton liable for Kono's injuries, and D.R. Horton faced a judgment of more than $20.5 million after the jury awarded compensatory and punitive damages. As we explain below, however, a general contractor ordinarily does not owe a duty of care to the employee of a subcontractor. That default rule applies here. Whether a duty exists is a threshold question of law in a negligence case; the defendant cannot be held liable without it. Because the district court erred in concluding that D.R. Horton owed Kono a duty of care and in submitting the claim to a jury, we hold that D.R. Horton is entitled to judgment notwithstanding the verdict.

---

[1]The parties dispute whether D.R. Horton, Inc., and D.R. Horton-Iowa, LLC, should have been treated as a single entity for purposes of imposing liability on the general contractor. Given our resolution of the appeal, we need not reach that issue. We refer to the two companies collectively as "D.R. Horton" throughout the opinion.

## I. Factual Background and Proceedings.

In April 2019, Kono survived an excavated trench cave-in while he was installing sewer pipe at a housing development in Polk City. Kono's employer, Royal Plumbing, was a plumbing and trenching contractor that connected new homes' sewer and water pipes to city utility services. Two other Royal Plumbing employees were working at the construction site with Kono on the day of the trench cave-in. One was his supervisor, Russ Hall; the other was Wade Parvi, a general laborer like Kono. No one from D.R. Horton was present. That morning, Hall used an excavator to dig the trench. As Hall dug, Kono and Parvi laid down piping to connect a sewage line from the home to the main sewage line near the street. Kono noticed underground water coming up during that process, which made the trench soil muddy and unstable.

The trench had no shoring or trench box to support its walls. Royal Plumbing instead used "benching" to guard against a cave-in. Benching is a protective measure that cuts stair steps into the side of the trench, as diagrammed below:



LANDWEHR/HALL 392

The use of benching was problematic in this instance for two reasons. First, OSHA regulations prohibit benching in the type of unstable soil that Royal Plumbing was working with—that is, type "C" soil. Second, the trench was improperly benched notwithstanding the soil type because the benches were too

narrow and steep to adequately protect against a trench collapse, as seen in this picture of the trench before the cave-in.



Kono was eventually working near the bottom of the roughly ten-foot-deep and fifty-foot-long trench while Hall operated the excavator outside the trench. Kono again noticed more underground water coming up, this time from the bottom of the trench. He pointed out the water to Parvi and said it did not look good. He then yelled up to Hall to alert him of the water and unstable dirt that appeared to be beginning to cave, saying that he did not want to get down in the bottom of the trench. Hall responded by telling Kono, "Get the f*** down there and get the f*** out before it does f***ing cave."

Kono testified that he knew it was unsafe but complied with Hall's instruction to continue because he felt obligated to do so as a new employee just one month into the job with Royal Plumbing. When the trench collapsed, Kono was crouched down to hook up the piping. He sat in a low squat on the balls of his feet, waiting for Parvi to hand him a piece of piping to connect to the pipeline. But then Kono felt himself get pushed forward by a rush of dirt as the trench

wall collapsed behind him. Everything quickly went black, at which point Kono realized he had been buried. Kono remained conscious as Parvi, Hall, and other subcontractors' workers nearby rushed to the bottom of the trench to pull him out of the dirt. Kono was completely buried for one to two minutes.

Parvi drove Kono to an urgent care facility, where an ambulance transported him to an emergency room in Des Moines. Kono suffered physical injuries that required surgery. He also suffered emotional injuries from the incident, which were severe and long-lasting.

Kono received workers' compensation through Royal Plumbing. He also sued three of his Royal Plumbing co-employees and D.R. Horton. He alleged four counts, three for gross negligence against his co-employees at Royal Plumbing—Russ Hall, Ernest Landwehr, and Travis Landwehr—and one for ordinary negligence against D.R. Horton. Hall, as discussed above, was Kono's supervisor on the jobsite. Ernest Landwehr was Royal Plumbing's office manager and safety coordinator. Travis Landwehr was Royal Plumbing's president. All three co-employees reached a settlement with Kono after his claims for gross negligence withstood a motion for summary judgment.

Kono's claim against D.R. Horton proceeded to trial. Kono was not an employee of D.R. Horton—the largest homebuilder in the country. Instead, D.R. Horton was the general contractor that hired Kono's employer, Royal Plumbing, to complete plumbing and trenching work as a subcontractor for the Polk City housing development. Royal Plumbing failed to notify D.R. Horton about Kono's injuries, despite OSHA regulations requiring notification. An investigation of the incident by Iowa OSHA in June 2019 alerted D.R. Horton about the accident two months after the trench cave-in. The

agency's investigation resulted in a citation against Royal Plumbing but not D.R. Horton.

A master agreement between D.R. Horton and Royal Plumbing provided that Royal Plumbing must "fully comply with and implement all government laws (OSHA) pertaining to safety standards." D.R. Horton could fine Royal Plumbing, although it never did, for failing to do so on any D.R. Horton project. The agreement was initially executed between Classic Builders and Royal Plumbing in 2016. D.R. Horton took Classic Builders' place in the master agreement when it purchased that company's assets in late 2018. Before the purchase, some projects within the Polk City housing development were D.R. Horton's projects, while others were managed by Classic Builders. Royal Plumbing employees—including Kono at the time he was injured in April 2019—often did not even know that they were working on a D.R. Horton job.

After D.R. Horton took over Classic Builders, it entered a Plumbing Scope of Work (Turnkey) with Royal Plumbing in February 2019, which covered the work that Royal Plumbing would complete for the development in Polk City, where Kono was injured. The scope-of-work contract required that Royal Plumbing "shall utilize OSHA compliant trench protection, as needed, during the installation of the water and sewer laterals." It also imposed responsibility on D.R. Horton to "[p]rovide regular supervision from the DHI Job Superintendent" and provided that D.R. Horton "shall maintain the authority to direct all work, unless otherwise stated, and shall be awarded all final decisions."

D.R. Horton also had a corporate safety manual, titled "Safety & Health Program—North Region." The manual detailed the responsibilities of D.R. Horton's full-time safety personnel, including a "Division Regulatory Compliance Administrator" who was tasked with directing employees to enforce

safety rules like OSHA regulations on its jobsites. Kono relied heavily on the contents of the safety manual during trial. Despite testimony at trial that subcontractors were required to sign D.R. Horton's safety manual, Royal Plumbing never did.

Kono's negligence claim prevailed at trial. The jury awarded Kono both compensatory and punitive damages against D.R. Horton for a total judgment of $20,544,413.50. Pursuant to Iowa Code section 668A.1(2)(*b*) (2021), seventy-five percent of the $16,180,000 punitive damages award—$12,135,000—was owed to the State's civil reparations trust fund. The State intervened on appeal to defend the punitive damages award.

At trial, D.R. Horton unsuccessfully moved for a directed verdict on the basis that, inter alia, it did not owe Kono a duty of care—a necessary element to sustain Kono's negligence claim. The district court also denied D.R. Horton's posttrial motion for judgment notwithstanding the verdict on the same basis.

D.R. Horton appealed, and we retained the case. It now challenges: whether it owed a duty of care to Kono, the employee of a subcontractor; the district court's treatment of the D.R. Horton parent company and its Iowa subsidiary (doing business as Classic Builders) collectively as one defendant; certain jury instructions regarding duty and comparative fault; and the award of punitive damages.

As explained below, we agree with D.R. Horton's first argument that it did not owe Kono a duty of care. We therefore do not reach the remaining issues. In addressing D.R. Horton's duty-of-care argument, "[w]e review district court rulings on motions for directed verdict and judgment notwithstanding the [verdict] 'for the correction of errors at law.' " *Selden v. Des Moines Area Comm. Coll.*, 2 N.W.3d 437, 443 (Iowa 2024) (quoting *Godfrey v. State*, 962 N.W.2d 84,

99 (Iowa 2021)). We view the evidence "in the light most favorable to the nonmoving party"—in this case, Kono. *Clark v. State*, 7 N.W.3d 740, 749 (Iowa 2024) (quoting *Miranda v. Said*, 836 N.W.2d 8, 14 (Iowa 2013)).

## II. Analysis.

In a negligence case, there is no liability unless the defendant owes the plaintiff a duty of care. *Morris v. Legends Fieldhouse Bar & Grill, LLC,* 958 N.W.2d 817, 821 (Iowa 2021) ("An actionable negligence claim requires 'the existence of a duty to conform to a standard of conduct to protect others . . . .' " (omission in original) (quoting *McCormick v. Nikkel & Assoc., Inc.*, 819 N.W.2d 368, 371 (Iowa 2012))). A duty requires the defendant to exercise "ordinary care" by acting in a way that protects the plaintiff from an unreasonable risk of harm. *Singh v. McDermott*, 2 N.W.3d 422, 425 (Iowa 2024) (quoting *Klobnak v. Wildwood Hills, Inc.*, 688 N.W.2d 799, 801 (Iowa 2004)); *accord Martinez v. State*, 986 N.W.2d 121, 125 (Iowa 2023). The threshold question of whether the defendant owes the plaintiff a duty of care "is always a matter of law for the court." *Hoffnagle v. McDonald's Corp.*, 522 N.W.2d 808, 811 (Iowa 1994); *accord Sankey v. Richenberger*, 456 N.W.2d 206, 207 (Iowa 1990). If there is no duty, the defendant is entitled to judgment as a matter of law. *E.g., Hoyt v. Gutterz Bowl & Lounge, L.L.C.*, 829 N.W.2d 772, 775 (Iowa 2013) ("While summary adjudication is rarely appropriate in negligence cases, the determination of whether a duty is owed under particular circumstances is a matter of law for the court's determination."); *McCormick*, 819 N.W.2d at 369 (affirming summary judgment for a defendant because it owed the plaintiff no duty of care).

**A. General Contractors Ordinarily Owe No Duty to an Independent Contractor's Employee.** As a general matter, "[a]n actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical

harm." *McCormick*, 819 N.W.2d at 374 (quoting 1 Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 7(a), at 77 (A.L.I. 2010)). But this case illustrates why we apply a no-duty default rule for the employers of independent contractors when the contractor's employee gets injured. In this case, the subcontractor performed the trenching, failed to install appropriate safety devices, and directed its own employee to go into the trench and do the work. The general contractor was not present at the job site and did not even learn of the accident until two months later.

We have long recognized that a general contractor typically does not owe a duty of care to the employee of a subcontractor. *E.g.*, *id.* at 371; *Lunde v. Winnebago Indus., Inc.*, 299 N.W.2d 473, 475 (Iowa 1980) (en banc). A passive supervisory role fails to impose responsibility on the general contractor for the details of the work it hires a subcontractor to manage and execute. *See, e.g.*, *McCormick*, 819 N.W.2d at 374 (explaining that "the cases involving parties that turn over control of premises to another party are 'a category of cases' where 'an articulated countervailing principle or policy' applies" to remove the general duty of care (quoting *Thompson v. Kaczinski*, 774 N.W.2d 829, 835 (Iowa 2009))); *Van Fossen v. MidAm. Energy Co.*, 777 N.W.2d 689, 698 (Iowa 2009) (explaining why the relationship between general contractors and subcontractors' employees dictates a no-duty default rule). Responsibility rests with the subcontractor, given its specialized expertise and control over the day-to-day operations of its work. *Kragel v. Wal-Mart Stores, Inc.*, 537 N.W.2d 699, 702 (Iowa 1995) (citing Restatement (Second) of Torts § 409 cmt. *b* (A.L.I. 1965)). The subcontractor, not the general contractor, is usually in the best position to reduce risk and prevent injury to its own employees. *Id.*; *Van Fossen*, 777 N.W.2d at 698; *see also Bd. of Water Works Trs. v. Sac Cnty. Bd. of Supervisors*, 890 N.W.2d 50, 66 (Iowa 2017)

("Economic theory underlying tort law favors placing liability on the party who can avoid the harm at the least cost.").

Only when an exception to the no-duty baseline applies does the general contractor owe a duty of care to a subcontractor's employee who gets injured on the jobsite. Kono argues that two exceptions apply in this case: retained control and peculiar risk. For the former, a general contractor owes a duty of care if it retains control over the operative detail of the subcontractor's work. *E.g.*, *Downs v. A & H Constr., Ltd.*, 481 N.W.2d 520, 525 (Iowa 1992) (citing Restatement (Second) of Torts § 414 cmt. *c*); *Porter v. Iowa Power & Light Co.*, 217 N.W.2d 221, 228–30 (Iowa 1974). For the latter, it owes a duty if the nature of the work at issue inherently involves a peculiar risk that ordinary caution cannot mitigate. *E.g.*, *Van Fossen*, 777 N.W.2d at 696–97 (discussing Restatement (Second) of Torts §§ 413, 416, 427); *Robinson v. Poured Walls of Iowa, Inc.*, 553 N.W.2d 873, 876–78 (Iowa 1996). As explained below, each exception has demanding requirements under Iowa common law that are not met here.

**B. The Retained Control Exception Does Not Apply.** "[T]he issue of retained control is inescapably part of the duty issue, which is necessarily and properly determined as a matter of law by the court." *Van Fossen*, 777 N.W.2d at 697 (alteration in original) (quoting *Hoffnagle*, 522 N.W.2d at 814). We have frequently applied the retained control exception as expressed in section 414 of the Restatement (Second) of Torts. *See id.*; *Hoffnagle*, 522 N.W.2d at 814; *Porter*, 217 N.W.2d at 229. Comment *a* to section 414 explains that "the retained control must be over the 'operative detail of doing any part of the work.'" *Porter*, 217 N.W.2d at 229 (quoting Restatement (Second) of Torts § 414 cmt. *a*, at 387). Comment *c* clarifies the level of retained control contemplated by the rule:

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner

in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

*Id.* (quoting Restatement (Second) of Torts § 414 cmt. *c*, at 388). Thus, the exception is narrow. It cannot impose a duty unless the general contractor "retains control of the [sub]contractor's day-to-day operations." *Van Fossen*, 777 N.W.2d at 697. "The degree of control retained by the employer is the critical element in determining liability." *Hernandez v. Midwest Gas Co.*, 523 N.W.2d 300, 303 (Iowa Ct. App. 1994).

Our precedents under Iowa common law have also been consistent with Restatement (Third) of Torts section 56: "An actor who entrusts work to an independent contractor owes no duty as to the manner in which the work is performed by the contractor, except . . . [w]hen an actor entrusts work to an independent contractor but retains control over any part of the work, the actor has a duty of reasonable care as to the exercise of the retained control." 2 Restatement (Third) of Torts: Liab. For Physical & Emotional Harm § 56(a)–(b), at 389–90 (A.L.I. 2010). A general contractor can retain control through contract or through conduct, but neither form of the exception applies in this case.

1. *The contract did not retain sufficient control to impose a duty of care.* Kono argues that the retained control exception applies because D.R. Horton "retained complete authority" through its contract with Royal Plumbing, which provided that D.R. Horton "shall maintain the authority to direct all work" and "shall be awarded all final decisions." Our caselaw defeats Kono's argument. A general contractor retaining the broad contractual right to supervise a subcontractor or

make a final decision when they disagree does not trigger the exception. *See Downs*, 481 N.W.2d at 525 (emphasizing that a general right to order work stopped or to prescribe alterations and deviations to the work "*is not enough*" to impose liability on a general contractor for injuries to a framing subcontractor's employee injured while using scaffolding supplied by the general contractor but erected by the subcontractor (quoting Restatement (Second) of Torts § 414 cmt. *c*, at 388)); *Lunde*, 299 N.W.2d at 479 (explaining that "a broad general power of supervision and control as to the results of the work" does not impose a duty (quoting *Stilson v. Moulton-Niguel Water Dist.*, 98 Cal. Rptr. 914, 918 (Ct. App. 1971))). Broad or general contractual rights are insufficient given the practical realities of the parties' relationship:

> The limited nature of the duty owed by employers of independent contractors takes into account the realities of the relationship between employers and their contractors. One of these realities is that employers often have limited, if any, control over the work performed by their contractors. Employers typically hire contractors to perform services beyond the employers' knowledge, expertise, and ability. The contractors' knowledge and expertise place[] them in the best position to understand the nature of the work, the risks to which workers will be exposed in the course of performing the work, and the precautions best calculated to manage those risks. These realities dictate that the persons in the best position to take precautions to manage the risks are the contractors. The policy of the law therefore justifies the rule placing the primary responsibility on the contractor for assuring proper precautions will be taken to manage risks arising in the course of the performance of the work.

*Van Fossen*, 777 N.W.2d at 698. Thus, D.R. Horton's retention of such general rights to "direct all work" and "be awarded all final decisions" under the contract here is insufficient to impose a duty of care. *See Porter*, 217 N.W.2d at 230 ("The generally accepted rule is that retention of the right to inspect work under construction to see that the provisions of the contract are carried out and to stop

work if they are not is insufficient in itself to constitute retention of control of any part of the work within the meaning of the restatement principle.").

Instead, the contract must give the general contractor control over the specific part of the work that caused the injury. *See Downs*, 481 N.W.2d at 525 ("[T]he employer must have retained at least some degree of control over the manner in which the work is done." (quoting Restatement (Second) of Torts § 414 cmt. *c*, at 388)); *Devore v. Am. Eagle Energy Corp.*, 937 N.W.2d 503, 506 (N.D. 2020) ("The liability created by Section 414 arises *only when the employer retains the right to control the method, manner, and operative detail* of the work; it is not enough that the employer merely retains the right to inspect the work or to make suggestions which need not be followed." (emphasis added) (quoting *Fleck v. ANG Coal Gasification Co.*, 522 N.W.2d 445, 448 (N.D. 1994))).

The relevant work that caused Kono's injuries involved constructing the trench Royal Plumbing employees would work in as they connected the water and sewer pipes. But the governing scope-of-work contract in this case expressly required Royal Plumbing—not D.R. Horton—to "utilize OSHA compliant trench protection, as needed, during the installation of the water and sewer laterals." D.R. Horton's broad, general rights as a general contractor to "direct all work" did not retain control over the operative details of the specific work that caused Kono's injury. *See, e.g.*, *Wiberg v. Metro Storage, LLC*, 258 N.E.3d 52, 64 (Ill. App. Ct. 2024) (holding that a general contractor owed no duty under a retained control theory to an independent contractor's employee who was injured while working in a trench to lay the foundation of a self-storage building when the contract required the independent contractor to, *inter alia*, comply with all OSHA regulations while allowing the general contractor to reject work and order revisions).

We have also recognized that a "duty may be imposed by contract" if "the contract relied on expressly imposed safety responsibility on the general contractor." *Porter,* 217 N.W.2d at 228–29. The contract in *Giarratano v. Weitz Co.* did just that where it provided: "The contractor shall take All necessary precautions *for the safety of employees on the work,* and shall comply with all applicable provisions of federal, state, and municipal safety laws and building codes to prevent accidents or injury to persons on, about or adjacent to the premises where the work is being performed." 147 N.W.2d 824, 828 (Iowa 1967) (emphasis added), *abrogated in part on other grounds by, Van Fossen,* 777 N.W.2d at 695 n.6; *cf. Porter,* 217 N.W.2d at 229 ("[T]his situation is not like that in *Giarratano* since in that case the contract relied on expressly imposed safety responsibility on the general contractor which was in the contractual position of the City in this case. Here the contract expressly imposes safety responsibility on [the independent contractor] . . . .").

Kono relied extensively on the detailed safety-responsibility provisions of D.R. Horton's corporate safety manual during trial. We need not decide whether that manual would have been sufficient to retain safety obligations for D.R. Horton, *cf. Wiberg,* 258 N.E.3d at 62 ("The mere existence of a safety program, safety manual, or safety director is insufficient to trigger a duty of care under section 414."); *Golik v. CBS Corp.,* 472 P.3d 778, 798–99 (Or. Ct. App. 2020) (explaining that the contractual "right to stop work for safety violations" and require a subcontractor to "comply with the basic safety rules of the particular mill" was insufficient to support a retained control theory of liability), because the manual was never made part of Royal Plumbing's contract with D.R. Horton. Recall that D.R. Horton took over the Royal Plumbing contract from Classic Builders just months before Kono's accident, and Classic Builders had

no such manual. Royal Plumbing entered into a scope-of-work contract with D.R. Horton, but it did not sign the D.R. Horton safety manual as other subcontractors apparently did. Importantly, Kono does not argue otherwise. Nor does he rely on the safety manual to support his argument that D.R. Horton retained the contractual right to provide for the safety of its subcontractor's employees.

In short, D.R. Horton did not retain control over the operative details of Royal Plumbing's work via contract. The contract's reservation of general rights for D.R. Horton to direct or supervise Royal Plumbing lacks the specificity required to impose responsibility on D.R. Horton for injuries resulting from the manner in which Royal Plumbing performed its trenching work. Nor did the parties' agreement expressly impose safety responsibilities on D.R. Horton.

2. *D.R. Horton's conduct did not retain sufficient control to impose a duty of care.* Without a specific contractual obligation, the retained control exception "requires a certain amount of control to be exercised on behalf of the general contractor before it can become liable for injury to an employee of a subcontractor." *Downs*, 481 N.W.2d at 525; *accord* 2 Restatement (Third) of Torts § 56 cmt. *c*, at 392 ("[A] hirer might exercise control sufficient to warrant a duty . . . even if a contract does not provide for that control."). The exception is based on the general contractor's wrongdoing. *Kragel*, 537 N.W.2d at 703 (explaining that Restatement (Second) of Torts section 414 "deal[s] with liability imposed because of the employer's actual fault"). It is a theory of direct negligence in the exercise of its retained control, not one of vicarious liability for the subcontractor's negligence. *Contrast Mendez v. Echeverria*, No. 4:21–cv–00142–JEG–SBJ, 2022 WL 5052505, at *10 (S.D. Iowa Aug. 24, 2022) (holding that the general contractor did not retain control when it showed the

subcontractor what needed to be demolished but let the subcontractor "control[] how the work was done"), *and Hernandez,* 523 N.W.2d at 303 (holding that the general contractor was not liable to subcontractor's employee who became asphyxiated while cutting gas pipes and suffered brain damage because it "did not instruct [the] employees on the mechanics of cutting and capping gas lines"), *with Farris v. Gen. Growth Dev. Corp.,* 354 N.W.2d 251, 253–54 (Iowa Ct. App. 1984) (holding that the general contractor retained control and owed a duty of care because its on-site supervisor "directed [the] workers on what to do and how to do it").

Kono cannot show that D.R. Horton, through its conduct, retained control over the operative work (i.e., digging the trench) or the safety of Royal Plumbing's employees. The only actual exercise of control over Royal Plumbing that Kono identifies is D.R. Horton's safety director notifying a Royal Plumbing supervisor that its employees were not wearing hard hats, as required by OSHA. Those general safety directives are insufficient to show that D.R. Horton retained control by its conduct. *See Hernandez,* 523 N.W.2d at 303 (holding that the general contractor did not retain control over safety for the subcontractor's employees even though its "inspectors inspected [the] work site every three hours on a rotating basis and told [the] employees to wear hard hats and safety glasses"); *see also Mendez,* 2022 WL 5052505, at *10 ("Cabrera Mendez nevertheless argues that Darling demonstrated its control over C-TEC[']s operations by providing a safety orientation to C-TEC employees and by periodically walking through the work area to ensure C-TEC's crew members were wearing PPE. . . . These facts do not impart a duty of care."). Even then, D.R. Horton's safety director testified that he did not deal directly with Royal Plumbing's general laborers like Kono because he was "not their boss."

Royal Plumbing supervisors handled the hard-hat issue with its employees. And more broadly, Royal Plumbing's president testified that Royal Plumbing did not "rely upon Classic Builders or D.R. Horton for the responsibility of safety at the job site."

When a contract does not retain for the general contractor control over the operative work, the general contractor must actually exercise control over the work that causes injury for the retained control exception to apply. *See Downs*, 481 N.W.2d at 525; *cf. Lunde*, 299 N.W.2d at 479 ("[T]he amount of . . . involvement in overseeing the construction must be substantial in order to impose liability . . . ."). Kono acknowledges that D.R. Horton was not involved in deciding how Royal Plumbing's excavation work was completed. Only Royal Plumbing dug the trench and directed Kono's labor inside of it. Because D.R. Horton played no role in managing or performing the excavation work that caused Kono's injuries, its conduct did not invoke the retained control exception to impose a duty of care.

**C. The Peculiar Risk Exception Does Not Apply.** Next, Kono argues that D.R. Horton owed a duty of care under Restatement (Second) of Torts sections 413, 416, and 427 because trenching work creates a peculiar risk of cave-ins. These sections impose a duty on a general contractor that hires an independent contractor to perform work likely to create a peculiar risk, or involving a special danger, of physical harm to others absent special precautions. *See Robinson*, 553 N.W.2d at 876–77 (discussing Restatement (Second) of Torts §§ 413, 416, 427). "The duties described are owed by a general contractor to the employees of an independent contractor." *Id.* at 877. "Many types of industrial work involve some significant degree of risk that is outside the definition of peculiar risk under the Restatement (Second) sections 413 and 416."

*Van Fossen*, 777 N.W.2d at 694. And to create a nondelegable duty of care on behalf of the general contractor under section 427, the danger "must be inherent in the work *when properly done.*" *Id.* at 695 (quoting *Clausen v. R.W. Gilbert Constr. Co.*, 309 N.W.2d 462, 466 (Iowa 1981)).

No matter the theory of liability under the peculiar risk exception, we apply it sparingly: "Such a risk [must be] inherent in the construction of the building because the project was conspicuously, exceptionally, unusually dangerous with the mention or sight of such work immediately causing the reaction 'DANGER!' " *Lunde*, 299 N.W.2d at 478 (citation modified) (quoting Philip Mechem, *Outlines of the Law of Agency* § 488, at 336–37 (4th ed. 1952)). A "mine-run building project[]" cannot meet that rigorous standard. *Clausen*, 309 N.W.2d at 466; *accord Thrasher v. Gerken*, 309 N.W.2d 488, 490 (Iowa 1981); *Lunde*, 299 N.W.2d at 479.

This issue is controlled by our decision in *Robinson v. Poured Walls of Iowa, Inc.*, where we held that residential excavation work does not constitute a peculiar risk as a matter of law. 553 N.W.2d at 875, 877–78. "There is no dispute that certain tasks, such as working in excavated trenches, involve risk of injury, or even death. But to invoke the remedies of [the peculiar risk exception], the task must be fraught with danger." *Id.* at 877 (citing *Lunde*, 299 N.W.2d at 478). We thus applied "our well-established general rule that ordinary building projects are not covered." *Id.*; *accord Thrasher*, 309 N.W.2d at 489–90. We reach the same conclusion here.

A general contractor does not owe a duty of care under Iowa common law every time residential excavation work is performed. The peculiar risk inquiry turns on the nature of the work itself, not on the severity of the resulting risks if performed negligently. *Van Fossen*, 777 N.W.2d at 695 ("[T]he danger must

inhere 'in the activity itself at *all times*, whether or not carefully performed.' " (quoting *Clausen*, 309 N.W.2d at 467)). A peculiar risk is nondelegable only when the risk persists despite proper safety precautions, which is not the case here. *Robinson*, 553 N.W.2d at 877 ("[T]he risk to [a trenching employee] was not inherent in or peculiar to the typical excavation of a trench but arises out of the failure to use proper protective practices. This type of excavation, when done with standard precautions, presents no extraordinary risks of caving in." (quoting *Peterson v. City of Golden Valley*, 308 N.W.2d 550, 554 (N.D. 1981))). Kono's argument that trench work can be highly dangerous when done negligently does not mean that danger inheres in the task. *Id.* ("Nothing in the record before us suggests that this sewer line repair project presented hazards that could not have been minimized by the exercise of ordinary caution.").

We reject Kono's attempt to distinguish *Robinson* factually on the basis that it involved a different type of risk related to a trench—that a dirt clod would roll into the trench, which Kono concedes "is dangerous, but not as inherently deadly as a trench collapse that can bury someone." Such a narrow distinction cannot be drawn. Superficial factual distinctions do not set aside our precedents. The danger in *Robinson* was caused by a co-worker's improper construction of a trench—specifically, the "failure to shore the vertical wall" of the trench. 553 N.W.2d at 877 ("As Robinson's expert testified, Spaw's failure to shore the vertical wall likely created the condition that allowed the clod of dirt to roll onto Robinson while he was in the ditch."). Whether the improperly shored wall allowed a dirt clod to fall into the trench or the wall itself to cave-in, both risks involve the customary hazards associated with residential excavation work.

Kono argues that if we do not distinguish *Robinson*, we should revisit it. He urges us to follow the lead of the Montana Supreme Court in *Beckman*

*v. Butte-Silver Bow County,* 1 P.3d 348, 353–54 (Mont. 2000), which overruled its prior cases applying section 416 of the Restatement similar to how we applied it in *Robinson.* In *Beckman,* the Montana Supreme Court held that a general contractor owes a nondelegable duty with respect to "trenching, where workers are exposed to the risk of being buried if the operations are not safely conducted." *Id.* at 353 ("Trenching operations of this nature are intrinsically or inherently dangerous as a matter of law."). The court explained that "[t]he distinction described in the Restatement [section 416] between 'ordinary' or standard and 'special' precautions depends on whether the precaution is meant to counter a common or a peculiar risk." *Id.* It then concluded that while a general contractor is not liable for a subcontractor's inherently dangerous operations that require only ordinary or standard precautions, it is liable for such operations that require "special precautions." *Id.* at 353–54. Applying that distinction to trenching, *Beckman* reasoned that "requiring workers to enter a trench where they could be buried if a cave-in resulted[] requires special precautions," and emphasized that "[t]he proper use of such precautions requires special knowledge and, when not followed or properly applied, may result in instantaneous death to the workers." *Id.* at 354.

We decline to overrule *Robinson* to follow *Beckman.* Rather, we agree with those courts that have since rejected *Beckman*'s analysis as unpersuasive:

> To find every trench inherently dangerous would allow the exception in Sections 416 and 422 of the Restatement to swallow the general rule in Section 409, against which the *Beckman* concurring opinion warned. Further, it would be inconsistent with our prior holding that a special danger or peculiar risk exists only where, "the risk is *different* from the usual and ordinary risk associated with the general type of work done." Characterizing all excavation work as involving a special danger or peculiar risk would render the terms "special danger" or "peculiar risk" meaningless, and we decline to do so.

*Dunkle v. Middleburg Mun. Auth.*, 842 A.2d 477, 484 (Pa. Commw. Ct. 2004) (footnote and citation omitted) (first quoting *Moles v. Norristown*, 780 A.2d 787, 791 (Pa. Commw. Ct. 2001)); *see also Nelson v. United States*, No. cv–04–52–GF–CSO, 2006 WL 8435786, at *4 (D. Mont. Mar. 8, 2006) ("*Beckman* appears to be at odds with the rule of law in some other states." (citing *Yanez v. United States*, 63 F.3d 870 (9th Cir. 1995), applying California law, and *Dunkle*, 842 A.2d 477, applying Pennsylvania law)).

It cannot be disputed that had Royal Plumbing followed OSHA guidelines and used shoring or a trench box instead of an improperly constructed bench, the risk of a cave-in would have been minimal. *See, e.g.*, *Dunkle*, 842 A.2d at 484 ("[T]he precautions needed to prevent a trench cave-in are not technically complex and have likely been in use for as long as trenches have been excavated."). The peculiar risk exception therefore does not impose a duty of care on D.R. Horton as the general contractor. Kono's negligence claim thus fails as a matter of law.

### III. Conclusion.

The baseline rule that a general contractor owes no duty of care to the employees of an independent contractor stands under the facts of this case. D.R. Horton did not retain control—neither by contract nor through its conduct—over the operative detail of the work that caused Kono's injuries. And trenching work for a residential construction project, as a matter of law, does not create the type of peculiar risk that imposes a duty on the general contractor. We therefore hold that D.R. Horton is entitled to judgment notwithstanding the verdict.

**Reversed.**

All justices concur except Christensen, C.J., who takes no part.